**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**BAYTANK (HOUSTON), INC.,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**BAYTANK (HOUSTON), INC., et al.,**
**Defendants–Appellees.**

Nos. 89–2129, 89–2172.

United States Court of Appeals,
Fifth Circuit.

June 13, 1991.

George McCall Secrest, Jr., Houston, Tex., Jay J. Madrid, Karen C. Corallo, Greg Sivinski, Walter D. James, III, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for defendant-appellant.

Vicki L. Plaut, Martin W. Matzen, John A. Bryson and Paul S. Rosenzweig, Patrick M. Flachs, Attys., Appellate Section, Land & Natural Resources Div., Dept. of Justice, Washington, D.C., Gordon Speights Young, Jack Shepherd, Chief, Civil Div., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GARWOOD and HIGGINBOTHAM, Circuit Judges.[1]

GARWOOD, Circuit Judge:

These consolidated appeals arise from the trial of a 37–count indictment against two corporations and nineteen individuals for violations of federal environmental laws in the operation of a chemical transfer and storage facility. At the conclusion of the proceedings in the district court, only one defendant, Baytank (Houston), Inc. (Baytank), stood convicted—and only on two counts. Baytank, appellant in No. 89–2129 and an appellee in No. 89–2172, appeals its conviction on two counts of improper storage of hazardous wastes in violation of the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6928(d)(2)(A). The government, appellee in No. 89–2129 and appellant in No. 89–2172, appeals the district court's order granting Baytank and the only three individual defendants whom the jury found guilty, appellees Haavar Nordberg (Nordberg), Roy Johnsen (Johnsen), and Donald X. Gore (Gore), new trials on various counts charging offenses under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9603(b)(3), and the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1319(c)(1), and also granting Nordberg and Johnsen post-verdict judgments of acquittal and alternatively new trials on the two RCRA counts. The government also seeks a writ of mandamus directing the district court to impose the mandatory special assessment on the two counts that it left standing with respect to Baytank. We affirm with respect to Baytank's appeal in No. 89–2129, and we grant the government's petition for writ of mandamus; we affirm in part and reverse in part with respect to the government's appeal in No. 89–2172.

---

1. Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

## Facts and Proceedings Below

Baytank is a bulk liquid chemical transfer and storage facility located in Seabrook, Texas, near Houston. Baytank's principal function is to provide interim storage for customers transporting various chemicals. The three individual defendants before this Court are officers and employees of Baytank. Nordberg was executive vice president of Baytank, Johnsen was Baytank's safety manager and then its operations manager, and Gore was its technical manager.

This appeal concerns nine counts of the 37-count indictment. At the close of the government's case, the district court granted all defendants judgments of acquittal on all but eleven counts.[2] The jury, at the conclusion of the four-week trial, returned guilty verdicts on nine of the eleven counts submitted: counts 20–24, 27, 29, and 32 and 33.[3]

Counts 20–24, brought under the Clean Water Act, 33 U.S.C. § 1319(c)(1),[4] allege the willful or negligent discharge of pollutants[5] in wastewater from a Baytank outfall into Galveston Bay's Bayport Turning Basin, in violation of conditions established in a National Pollutant Discharge Elimination System (NPDES) permit, on "numerous occasions" over various stated time periods.[6] The district court instructed the jury that in order to convict on these charges, it had to find, beyond a reasonable doubt, the following:

(1) on or about the dates charged, the defendant discharged a pollutant willfully or negligently;

(2) the pollutant was discharged from a point source into a navigable waterway of the United States; and

(3) the defendant discharged a pollutant in violation of its permit.

The jury was also instructed that it had unanimously to agree, as to each defendant, on every specific instance on which a discharge occurred and that it had to identify, as to each such instance, whether each defendant committed the violation willfully or negligently. The jury was not given

---

2. The district court thereby adjudged all defendants acquitted and discharged except for the following:
 Baytank —Counts 20–24, 27–30, 32, 33;
 Nordberg —Counts 20–24, 27, 32, 33;
 Johnsen —Counts 20–24, 27–30, 32, 33; and
 Gore —Counts 22–24, 27.

3. The jury found the following defendants guilty on the following counts:
 Baytank —Counts 20–24, 27, 29, 32, 33;
 Nordberg —Counts 20–24, 27, 32, 33;
 Johnsen —Counts 20–24, 27, 29, 32, 33; and
 Gore —Counts 22–24, 27.
 Counts 32 and 33 are felonies; all the other counts on which guilty verdicts were returned are misdemeanors.
 The jury acquitted the defendants charged in counts 28 and 30 (which charged Baytank and Johnsen) but otherwise convicted on all counts that were submitted to it.

4. At the time of the events charged in the indictment, § 1319(c)(1) provided in pertinent part: "Any person who willfully or negligently violates section 1311 ... or any permit condition or limitation implementing any such sections in a permit issued under section 1342 of this title [a National Pollution Discharge Elimination System—NPDES—permit] ... shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation, or by imprisonment for not more than one year, or both."
 33 U.S.C. § 1311(a) provides:

"Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342 [the NPDES system], and 1344 of this title, the discharge of any pollutant by any person shall be unlawful."

5. The Water Pollution Prevention and Control chapter of the Clean Water Act defines the word "pollutant" in pertinent part as follows:

"[D]redged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

The district court in its instructions to the jury defined "pollutant" as follows:
"Dredged spoils, solid waste, chemical waste, rock, sand, dirt, and industrial, municipal, and agricultural waste discharged into water."

6. The time periods alleged in the indictments were as follows:
 Count 20 —August 1983 to December 1983;
 Count 21 —January 1984 to December 1984;
 Count 22 —January 1985 to December 1985;
 Count 23 —January 1986 to December 1986; and
 Count 24 —January 1987.

verdict forms with the possible dates identified, but had to come up with its own list of dates from the testimony and the documentary evidence.[7]

Count 27, another Clean Water Act count, alleges that from October 28, 1982 to April 28, 1986, Baytank, Nordberg, Johnsen, and Gore negligently or willfully failed to file discharge monitoring reports required by Baytank's NPDES permit with the United States Environmental Protection Agency (EPA).[8] The district court instructed the jury that in order to convict on this count, it had to find the following elements beyond a reasonable doubt:

(1) that the permit included a condition requiring the defendants to file dis-

charge monitoring reports with the EPA; and

(2) that from October 28, 1982 to April 28, 1986, the defendants willfully or negligently failed to file these reports with the EPA.

Again, the jury was instructed to identify, as to each defendant, each specific date of violation and whether the violation was willful or negligent.[9]

Count 29, brought under CERCLA, 42 U.S.C. § 9603(b)(3),[10] alleges that the defendants failed to notify the National Response Center of an April 27, 1985 release of more than one hundred pounds of the hazardous chemical acrylonitrile. Under 42 U.S.C. § 9603(a),[11] the National Response

---

**7.** On count 20, the jury found Baytank, Nordberg, and Johnsen guilty of willful violations on the following 1983 dates: October 14; November 3, 4, 7, 8, 9, 11, 16, 22, 25, 29; December 1, 2, 4, 5, 6, 7, 8, 9, 13, 16, 19, 28.

On count 21, the jury found Baytank, Nordberg, and Johnsen guilty of willful violations on the following 1984 dates: January 2, 4, 5, 6, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27; February 2, 6, 7, 8, 15, 17, 20, 21, 22, 23, 24, 27–28, 29; March 1, 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19, 26, 27, 28, 29; April 2, 3, 4, 11, 12, 26, 27; May 3, 4, 14, 15, 16, 17, 18, 24, 25, 29, 30, 31; June 1, 4, 5, 8, 14, 25; July 17, 18; August 3, 8, 17, 21–23, 27; September 5, 6, 7, 11, 12, 13, 27; October 1, 8, 10, 16, 17, 18, 19, 22; December 1, 2, 7, 12.

On count 22, the jury found Baytank, Nordberg, and Johnsen guilty of willful violations, and Gore guilty of negligent violations, on the following 1985 dates: January 19; February 5, 6, 8; March 5, 6, 18, 25; April 12, 19, 20, 21, 22, 29; May 1, 3, 4, 10, 27, 28; June 18; July 10, 15, 19, 23, 24, 25, 26; August 5, 10, 11, 12, 13, 15, 17, 18, 19, 20, 21, 22, 23, 25, 28, 31; September 1, 5, 9, 10, 11, 13, 28, 29, 30; October 5, 6, 7, 18, 22, 30, 31; November 2, 3, 5, 28; December 5, 11, 28, 29, 31.

On count 23, the jury found Baytank, Nordberg, Johnsen, and Gore guilty of negligent violations on the following 1986 dates: January 16, 20, 25, 26; February 10, 11; March 13, 24, 25; April 8, 19, 20, 21, 22; May 3, 5, 15; June 6, 12, 18, 23, 26; August 11, 25, 29.

On count 24, the jury found Baytank, Nordberg, Johnsen, and Gore guilty of a negligent violation on January 3, 1987.

**8.** The permit spelled out its reporting requirements as follows:

"Monitoring results obtained during the previous 3 months shall be summarized for each month and reported on a Discharge Monitoring Report Form (EPA No. 3320–1), post-

marked no later than the 28th day of the month following the completed reporting period.... Duplicate signed copies of these, and all other reports required herein, shall be submitted to the Regional Administrator and the State at the following addresses...."

**9.** The jury found Baytank and Nordberg guilty of negligent violations on the following dates: October 28, 1982; January 28, April 28, July 28, and October 28, 1983; January 28, April 28, July 28, and October 28, 1984; and January 28, 1985. The jury found Johnsen guilty of negligent violations on the following dates: July 28 and October 28, 1983; January 28, April 28, July 28, and October 28, 1984; and January 28, 1985.

The jury found Baytank, Nordberg, and Gore guilty of willful violations on the following dates: April 28, July 28, and October 28, 1985; and January 28 and April 28, 1986. The jury found Johnsen guilty of a willful violation on April 28, 1985.

**10.** At the time of the incident charged in the indictment § 9603(b)(3) provided as follows:

"Any person in charge of a facility from which a hazardous substance is released, other than a federally permitted release, in a quantity equal to or greater than that determined pursuant to section 9602 of this title who fails to notify immediately the appropriate agency of the United States Government as soon as he has knowledge of such release shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both. Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, except a prosecution for perjury or for giving a false statement."

**11.** Section 9603(a) provides as follows:

Center must be notified of the release of a hazardous substance in excess of the reportable quantity established by statute or regulation. The reportable quantity of acrylonitrile, established by regulation pursuant to 42 U.S.C. § 9602(a),[12] is one hundred pounds. 40 C.F.R. § 302.4.

Count 32, brought under the RCRA, 42 U.S.C. § 6928(d)(2)(A),[13] alleges that from April 1985 until September 1986, Baytank, Nordberg, and Johnsen knowingly stored hazardous wastes in *drums* at the Baytank facility in Seabrook without having obtained a permit. Count 33 sets forth the same allegation with respect to storage in *tanks* from March 1984 to September 1986.

At a motions hearing held following the trial, the district court set aside the jury's verdict, almost in its entirety. The district court entered judgments of acquittal for Nordberg and Johnsen on counts 32 and 33 (the RCRA counts), granted conditional new trials to them should their judgments of acquittal be reversed, and ordered new trials for all of the defendants on the re-

maining counts on which the jury had returned a guilty verdict. The court let stand only the jury's guilty verdict against Baytank on counts 32 and 33. The district court did not give any written statement of reasons or explanation for its action.

At sentencing, the district court fined Baytank $50,000 on count 32. The court suspended the sentence on count 33, subject to Baytank's providing and executing a community service program. The court refused to impose the mandatory $200 special assessment per count under 18 U.S.C. § 3013(a)(2)(B) on the ground that the law is a revenue-raising measure that originated in the Senate, and is therefore unconstitutional.

Baytank appeals its conviction on counts 32 and 33. The government petitions for a writ of mandamus to compel the district court to impose the special assessment on those counts. The government appeals the judgment of acquittal and conditional new trial with respect to Nordberg and Johnson

"Any person in charge of a vessel or an offshore or an onshore facility shall, as soon as he has knowledge of any release (other than a federally permitted release) of a hazardous substance from such vessel or facility in quantities equal to or greater than those determined pursuant to section 9602 of this title, immediately notify the National Response Center established under the Clean Water Act [33 U.S.C. § 1251 et seq.] of such release. The National Response Center shall convey the notification expedit[i]ously to all appropriate Government agencies, including the Governor of any affected State."

12. At the time of the incident charged in the indictment, 42 U.S.C. § 9602, CERCLA § 102, provided as follows:

"(a) The Administrator shall promulgate and revise as may be appropriate, regulations designating as hazardous substances, in addition to those referred to in section 9601(14) of this title, such elements, compounds, mixtures, solutions, and substances which, when released into the environment may present substantial danger to the public health or welfare or the environment, and shall promulgate regulations establishing that quantity of any hazardous substance the release of which shall be reported pursuant to section 9603 of this title. The Administrator may determine that one single quantity shall be the reportable quantity for any hazardous substance, regardless of the medium into which the hazardous substance is released.

"(b) Unless and until superseded by regulations establishing a reportable quantity under subsection (a) of this section for any hazardous substance as defined in section 9601(14) of this title, (1) a quantity of one pound, or (2) for those hazardous substances for which reportable quantities have been established pursuant to section 1321(b)(4) of Title 33, such reportable quantity, shall be deemed that quantity, the release of which requires notification pursuant to section 9603(a) or (b) of this title."

13. Section 6928(d)(2) provides as follows:
"Any person who knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter—
"(A) without a permit under this subchapter or pursuant to title I of the Marine Protection, Research, and Sanctuaries Act (86 Stat. 1052) [33 U.S.C. § 1411 et seq.]; or
"(B) in knowing violation of any material condition or requirement of such permit; or
"(C) in knowing violation of any material condition or requirement of any applicable interim status regulations or standards;
"shall, upon conviction, be subject to a fine of not more than $50,000 for each day of violation, or imprisonment not to exceed ... five years ..., or both. If the conviction is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment under the respective paragraph shall be doubled with respect to both the fine and imprisonment."

on counts 32 and 33, and it also appeals the district court's grant of a new trial to Baytank, Nordberg, Johnsen, and Gore on all of the remaining counts (numbers 20–24, 27, and 29) on which the jury returned verdicts of guilty.

## Discussion

### Part I—Baytank Appeal

Baytank in its appeal presents essentially five claims of error, which we discuss in order.

### A. Variance

Baytank argues that, in variance with the indictment, which alleged a violation of 42 U.S.C. § 6928(d)(2)(A) (knowing storage of hazardous waste without a permit), evidence introduced at trial and the court's instructions to the jury allowed the jury to convict for a violation of § 6928(d)(2)(C) (knowing violation of any material condition or requirement of any applicable interim status regulations or standards).

■ In general, once an indictment has been returned, its charges may not be broadened through amendment except by the grand jury. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960); *United States v. Mize,* 756 F.2d 353, 356 (5th Cir.1985); *United States v. Young,* 730 F.2d 221, 223 (5th Cir.1984); *see Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), *overruled in part, United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). In *Stirone,* the Supreme Court recognized that a trial court's amendment of the indictment need not be explicit to constitute reversible error, but that it may be implicit or constructive. *Young,* 730 F.2d at 223; *see Stirone,* 80 S.Ct. at 273. As this Court explained in *Young:*

> "*Stirone* requires that courts distinguish between constructive amendments of the indictment, which are reversible *per se,* and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of

the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, 'the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant.'" 730 F.2d at 223 (citations omitted).

■ Besides contesting Baytank's argument on the merits, the government argues that Baytank waived any objection.[14] Where no objection is made, review is normally limited to plain error. Nonetheless, courts have held that it is plain error to give instructions that permit a jury to convict for a crime not charged in the indictment because a court may not substantially amend an indictment through its jury instructions. *E.g., Mize,* 756 F.2d at 355; *Ricalday v. Procunier,* 736 F.2d 203, 207 (5th Cir.1984) (interpreting Texas law). We have held that such an error does not require reversal if it is harmless beyond a reasonable doubt. *United States v. Slovacek,* 867 F.2d 842, 848–49 (5th Cir.1989).

■ Baytank, however, not only failed to object to the allegedly overbroad portion of the court's charge, but that portion of the charge is the precise language requested by Baytank. A party generally may not invite error and then complain thereof. *E.g., United States v. Lopez–Escobar,* 920 F.2d 1241, 1246 (5th Cir.1991); *United States v. Raymer,* 876 F.2d 383, 388 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989); *United States v. Doran,* 564 F.2d 1176, 1177 (5th Cir. 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); *United States v. Taylor,* 508 F.2d 761, 763–64 (5th Cir. 1975). This Court has made clear that the

---

**14.** Baytank in its reply does not respond to the government's waiver argument.

invited error doctrine applies to jury instructions as well as evidentiary rulings. *United States v. Stanley*, 765 F.2d 1224, 1238 (5th Cir.1985); *United States v. Gray*, 626 F.2d 494, 501 (5th Cir.1980), *cert. denied sub nom. Wright v. United States* and *Fennell v. United States*, 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), and *cert. denied sub nom. Gray v. United States*, 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981), and *cert. denied sub nom. Barker v. United States*, 450 U.S. 919, 101 S.Ct. 1367, 67 L.Ed.2d 346 (1981); *United States v. Easterly*, 444 F.2d 1236, 1240 (5th Cir.1971). Although in those cases we did not address the precise question of a jury instruction allowing a conviction for a crime not charged in the indictment, we know of no reason why the invited error doctrine might not apply in some such situations, at least where it does not appear that a substantial miscarriage of justice would result from its application. In *Ricalday*, we noted that under Texas law, where the charge allows conviction on an unindicted offense, the error is "fundamental" and reversal is required even absent an objection from the defendant. 736 F.2d at 207. We further noted, however, that under the doctrine of invited error, a defendant would be precluded under Texas law from challenging such a charge if it had been requested by the defendant and given as requested. *Id.* at 207 n. 3 (citing *Cadd v. State*, 587 S.W.2d 736, 741 (Tex. Crim.App.1979) (en banc)).

**15.** Interim status is a transition mechanism created by Congress for hazardous waste treatment, storage, and disposal facilities existing as of November 19, 1980, allowing them to operate without a permit under certain conditions until a RCRA permit could be processed. 42 U.S.C. § 6925(e); 40 C.F.R. Part 265. Baytank did not begin building the facility until 1982 and, by its own admission, was not even incorporated until July 1981. The interim status provisions of the RCRA, including 42 U.S.C. § 6928(d)(2)(C), therefore do not apply to Baytank. Nor is there any evidence, or any claim by any party here or below, that Baytank had interim status.

**16.** Unless otherwise noted, all citations are to the 1984 edition of the Code of Federal Regulations, which reflected the regulations in effect at the time of the events charged in the indictment. Title 40 C.F.R. § 262.34(a) (1984) provided as follows:

Even if the doctrine of invited error did not apply, Baytank nonetheless would not prevail on this issue. In order to convict on counts 32 and 33, the government had to demonstrate that Baytank—which was not in "interim status" [15]—both had stored hazardous waste without a permit and had violated the limited conditions under which it could store those wastes without a permit. Baytank argues that a permit is required only for storage over 90 days. This assertion is misleading. EPA regulations do allow a facility to store hazardous waste for up to 90 days without a permit, but *only* if it complies with certain safe storage conditions. 40 C.F.R. § 262.34(a) (1984).[16] Knowing violation of any of the safe storage conditions set forth in 40 C.F.R. § 262.34(a) is subject to criminal prosecution under § 6928(d)(2)(A), even if that storage is for less than 90 days. Accordingly, the government can prove a violation of § 6928(d)(2)(A) either by showing unpermitted storage for longer than 90 days, *see* 40 C.F.R. § 262.34(b), or by showing unpermitted storage for any period of time in violation of any of the safe storage conditions of 40 C.F.R. § 262.34(a). Here, the government presented amply sufficient proof of both.

The district court instructed the jury that "[n]o one may store hazardous waste for *longer than* 90 days unless he has received a permit to do it" (emphasis added), and that "a generator of hazardous waste may

"A generator may accumulate hazardous waste on-site for 90 days or less without a permit or without having interim status provided that:

"(1) The waste is placed in containers and the generator complies with Subpart I of 40 CFR Part 265, or the waste is placed in tanks and the generator complies with Subpart J of 40 CFR Part 265 except § 265.193;

"(2) The date upon which each period of accumulation begins is clearly marked and visible for inspection on each container;

"(3) While being accumulated on-site, each container and tank is labeled or marked clearly with the words, "Hazardous Waste"; and

"(4) The generator complies with the requirements for owners or operators in Subparts C and D in 40 CFR Part 265 and with § 265.16."

accumulate waste on site for *90 days or less* without a permit if he meets these conditions" (emphasis added), and then listed the relevant § 262.34(a) conditions. The jury was next instructed that in order to convict it had to find that the defendant either "(1) knowingly stored hazardous waste without a permit for longer than 90 days or (2) knowingly failed to comply with any one of these conditions [those which had just been listed in the charge]." Baytank argues that the government's proof and the district court's instruction constituted a "constructive amendment of the Indictment in fatal variance with Counts 32 and 33 as charged in the Indictment," exposing it to conviction for another RCRA crime—42 U.S.C. 6928(d)(2)(C), violation of interim status (see note 15, *supra*). But the temporary storage of hazardous waste for less than 90 days under 40 C.F.R. § 262.34 has no necessary relationship to interim status. The temporary storage exception to the permit requirement applies to all generators who store hazardous wastes for less than 90 days, whether or not they have interim status, which Baytank did not have.

It is true that some of the elements critical to proving a criminal violation of interim status under § 6928(d)(2)(C) may be identical to some of the elements of the crime charged here under § 6928(d)(2)(A) where the unpermitted storage is for less than 90 days. This overlap exists because the regulations governing short-term storage by all facilities, 40 C.F.R. § 262.34(a)(1), incorporate by reference portions of the safe storage regulations devoted to interim status. This incorporation may well reflect EPA's judgment that safe storage practices should apply to short-term storage of hazardous waste, whether by facilities with interim status or without it.

Nonetheless, because there was no attempt to prove that Baytank sought or obtained interim status, nor any instruction (or argument) suggesting that a jury could find a violation of interim status, there is no chance that the jury convicted Baytank under § 6928(d)(2)(C). The evidence at trial was tied directly to the charged violation of § 6928(d)(2)(A), so there was no variance or constructive amendment of the indictment.

Baytank's complaints respecting variance and constructive amendment of the indictment present no reversible error.

## B. Duplicity

Baytank argues that both counts 32 and 33 are duplicitous, meaning that each charged more than one offense, contrary to Federal Rule of Criminal Procedure 8(a).[17] Baytank notes that these counts both cover a substantial period of time and that the government's bill of particulars specified various particular dates and also alleged "continuous and isolated, individual violations on all days" within the periods alleged in each of counts 32 and 33.

An indictment may be duplicitous if it joins in a single count two or more distinct offenses. *United States v. Robin*, 693 F.2d 376, 378 (5th Cir.1982). If an indictment is duplicitous and prejudice results, the conviction may be subject to reversal. *See United States v. Salinas*, 654 F.2d 319, 326 (5th Cir. Unit A 1981), *overruled on other grounds, United States v. Adamson*, 700 F.2d 953 (5th Cir. Unit B) (en banc), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).

Even if Baytank's duplicity argument had merit, Baytank has waived it by failing to object below. "This court has consistently required that objections to the indictment, such as duplicity, must be raised prior to trial." *United States v. Elam*, 678 F.2d 1234, 1251 (5th Cir.1982) (citing *United States v. Busard*, 524 F.2d 72 (5th Cir.1975), *cert. denied sub nom. Meyer v. United States*, 426 U.S. 948, 96

---

**17.** Federal Rule of Criminal Procedure 8(a) provides as follows:

"**(a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *United States v. Williams*, 203 F.2d 572 (5th Cir.), *cert. denied*, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 347 (1953)). This requirement is embodied in Rule 12(b)(2) of the Federal Rules of Criminal Procedure,[18] which has remained virtually unchanged from the time of its adoption in 1944. *See also Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896).

Baytank never raised a duplicity objection below with respect to either of counts 32 or 33. Baytank did file a motion to dismiss below which argued that counts 32 and 33 were "multiplicitous as to one another," in that they covered the same time frame and both involved storing hazardous waste without a permit. Plainly this is asserting multiplicity (charging the same offense in two separate counts) and not duplicity (charging more than one offense in a single count). Indeed, Baytank has not contended otherwise. Rather, Baytank relies on oral objections it made at a pretrial hearing. At this hearing Baytank's counsel did state that "many of the counts were duplicitous," but the only counts specifically so identified (out of the total of 37 counts in the indictment) were counts 16–23, 26, and 31; no mention was made of either count 32 or count 33. Accordingly, Baytank has waived its duplicity argument as to these counts.

■ Nor is there any good cause for granting Baytank relief from waiver under Rule 12(f). Notwithstanding that a defendant's actions, charged in a single count, could have been charged as separate violations, nevertheless a single count may be used where those actions "represent a single, continuing scheme," provided the indictment (1) notifies the defendant adequately of the charges against him; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendant to be convicted by a nonunanimous jury verdict. *Robin*, 693 F.2d at 378; *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir.1978). This analysis is supported by Federal Rule of Criminal Procedure 7(c)(1), which allows one or more specified means to be included in a single count. *See Pavloski*, 574 F.2d at 936. Baytank does not suggest that it was prejudiced on any of the first three grounds but does argue that the alleged duplicity deprived it of its right to a unanimous jury verdict.[19]

■ In any event, we observe that counts 32 and 33 appear to meet the *Robin* tests for permissible duplicity, with the possible exception of assuring a unanimous jury verdict. Thus, the complaint comes down to whether the jury instructions were sufficient, as it is clear that this aspect of a duplicity problem can be cured by appropriate special instructions which, for example, inform the jury that it must unanimously agree on *the specific basis* (*e.g.*, a given date or the like) on which it finds the defendant guilty under the count in question. *See, e.g., United States v. Gipson*, 553 F.2d 453, 457 (5th Cir.1977). Here the court gave only the usual, general unanimity charge. However, Baytank's requested instructions do not contain any special una-

---

**18.** Rule 12 provides in pertinent part:

"**(b) Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.... The following must be raised prior to trial:

. . . .

"(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings); or

. . . .

"**(f) Effect of Failure to Raise Defenses or Objections.** Failure by a party to raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver."

**19.** In its reply brief, Baytank also argues that "the government [in its appellate brief] admits to the duplicity by seeking fines for each individual violation charged in the counts." As we read the record and the government's brief, the government has never sought separate fines for the individual violations contained in the RCRA counts (32 and 33) that are the subject of Baytank's duplicity claim in this appeal.

nimity charges with respect to either count 32 or 33, and Baytank's oral objections to the charge do not complain of the absence of any instruction of that nature. Accordingly, any failure to instruct specially in that respect concerning count 32 or 33 is reviewable only under the narrow "plain error" standard of Fed.R.Cr.P. 52(b). *Pavloski*, 574 F.2d at 936; *see also Robin*, 693 F.2d at 379 (citing *Pavloski* with approval). Further, the instructions on counts 32 and 33 were, in all respects that are material to this point, the same as those Baytank itself requested. Thus, any error would be invited, and as we noted in Section B, *supra*, a party may not invite error and then complain thereof.[20]

No reversible error is presented by Baytank's duplicity argument.

## C. Mixture Rule—Knowledge Instructions

Baytank asserts that its conviction on count 33, the RCRA tank storage count, depends on the EPA's mixture rule, 40 C.F.R. § 261.3(a)(2)(iv), which defines a hazardous waste to include any mixture of solid waste and any one or more specifically listed hazardous wastes, without regard to how small an amount of hazardous waste is in the mixture. Although some aspects of Baytank's rather confusing argument may be viewed as a general challenge to the validity of the mixture rule or any conviction that depends on it, a closer examination of the argument reveals that it is really a challenge to the jury instructions for not requiring the jury to find, in order to convict, that Baytank knew that what was in its tanks was defined as hazardous under the mixture rule. Thus, Baytank asserts that it preserved this challenge by requesting instructions that the jury must find the substances were in fact hazardous and that the defendants knew that the waste was identified by the regulations as hazardous waste. Similarly, Baytank ar-

gues in effect that the fairness element of due process—proscribing felony conviction of one pure in heart and mind—requires a jury instruction either that the chemicals must be actually hazardous or that the defendants must know that they are identified as hazardous under the mixture rule. Further, Baytank states that "the central issue presented" by its mixture rule argument is that Baytank was constitutionally entitled to a jury instruction that required the jury to find, in order to convict, that the defendants knew the material was identified as a hazardous waste under the mixture rule, at least in instances where the hazardousness of the material in issue depends on that rule.

As an initial matter, the government contends that 42 U.S.C. § 6976(a) bars any challenge to the mixture rule in this proceeding, contending that under that statute one had either to challenge the mixture rule within 90 days after it was adopted (which was about six months before Baytank came into existence), or seek an exemption for the wastes in question under 40 C.F.R. § 260.22, or seek an amendment to the regulation through the procedures for that purpose, 40 C.F.R. § 260.22, and in either event, if unsuccessful before the EPA in those attempts, timely appeal the EPA's denial of relief to the D.C. Circuit under § 6976(a)(1). We need not decide this question, because assuming, *arguendo*, that we can reach such of Baytank's properly preserved contentions as are grounded on its complaints of the mixture rule, we hold that in any event those contentions present no reversible error. Baytank's arguments respecting the mixture rule do not present any properly preserved contention respecting the EPA's statutory authority to adopt the mixture rule (for example, that the rule is not supported by substantial evidence or is invalid because it is arbitrary and capricious or the like).[21]

---

**20.** In *Bins v. United States*, 331 F.2d 390 (5th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964), this court did reverse on a duplicity ground, but *Bins* is distinguishable. First, there was an adequate motion below, and second, the continuous series of events type of

situation was not presented, but rather two discrete, separate offenses were embraced in a single count. 331 F.2d at 392–93.

**21.** Baytank does raise a claim of denial of equal protection, complaining that manufacturers are (or may become) exempted from the mixture

*Cf. Touby v. United States,* — U.S. —, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). Therefore, the real issues presented on appeal in this respect are those which concern the court's charge on count 33.

A careful reading of Baytank's briefs reveals that it really raises only one complaint of the charge in this respect. However, before discussing that complaint, we do note that Baytank also seems to complain about the failure of the charge to require a finding that the wastes in the tanks were actually hazardous. We find that the court did so instruct the jury, or at least came close enough to doing so that Baytank may not complain of any failure to do so more precisely, as it did not object on this ground below. The court instructed that to convict under counts 32 and 33 the jury had to find that "[t]he defendant knowingly stored ... hazardous waste" *and* that "the defendant *knew* that the waste stored had the potential to be harmful to others or to the environment," and again that the defendant "knowingly stored hazardous waste" (emphasis added). We believe these instructions required the jury to find that the waste stored was hazardous. The charge does not make any reference to the mixture rule, either by name or by stating any of its provisions. Nor does the charge—apart from its referenced requirement that the defendants "knew the waste stored had the potential to be harmful to others or to the environment"—otherwise define "hazardous" or "hazardous waste."

In their supplemental proposed jury instructions, the defendants requested a charge requiring the jury to find that the waste "was in fact hazardous and had the potential to be harmful to others or the environment" and that each defendant knew this. Later, the defendants present-ed a revised requested jury charge which, with respect to counts 32 and 33, was virtually word for word the same as the charge subsequently given by the court insofar as concerns a requirement that the jury find that the waste be actually hazardous in fact. Moreover, none of the charges requested by the defendants contained a definition of "hazardous" or "hazardous waste." The oral objections made by the defendants to the court's charge did not contain any objection on the ground that the charge failed to require the jury to find that the wastes were actually hazardous, or that the charge was not explicit enough in this regard, or improperly failed to contain any definition of, or incorrectly defined, "hazardous" or "hazardous waste." Further, the statute, 42 U.S.C. § 6903(5)(B), defines hazardous waste as any waste that "may— ... pose a substantial present or potential hazard to human health or the environment when improperly ... stored ... or otherwise managed."[22] The court's charge, which required the jury to find that the defendants had stored "hazardous waste" and that the defendants "knew" that the waste stored "had the potential to be harmful to others or to the environment," seems logically to require that the jury find that the waste was actually hazardous in the sense that § 6903(5)(B), as above quoted, defines it. The only possibly meaningful difference between the court's instruction and the quoted statutory definition is that the instruction does not contain the word "substantial" as a modifier of "potential." Nonetheless, neither did the defendants' requested instructions contain "substantial" or anything like it in this regard, and there was no objection to the charge for the failure to include such or a similar word.[23]

rule, while no such exemptions or potential exemptions are provided for storage facilities. This equal protection claim (which is not vigorously pressed) is clearly without any merit whatever, *see, e.g., Home Depot, Inc. v. Guste,* 773 F.2d 616, 625–26, *on reh'g,* 777 F.2d 1063 (5th Cir.1985), and is in any event tied to nothing more than the instructional complaints discussed below. These remarks are likewise applicable to any contentions as to invalidity be-

cause of vagueness. *See Home Depot,* 773 F.2d at 627–29, *on reh'g,* 777 F.2d at 1064–65.

**22.** Further, § 6921(b) gives the EPA Administrator the authority to promulgate regulations listing particular hazardous wastes within the meaning of § 6903(5).

**23.** Also, the charge does not contain the statutory words "when improperly ... stored ... or

The one objection to the charge in this connection that the defendants have properly preserved relates to the charge's requirement, as a separate and additional element that the jury must find in order to convict, that the wastes had been identified by the EPA regulations as hazardous wastes under the RCRA. The defendants requested instructions contained a requirement in this respect, not included in the charge as given, that the defendants *knew* that the waste was identified by the regulations as a hazardous waste under the RCRA. It is the failure to give this requested instruction that the defendants have properly preserved on appeal and urge as a ground for reversal.

■ We conclude that in the circumstances of this case the court was not required to instruct that the jury must find that the defendants knew the waste had been identified by the EPA regulations as hazardous under the RCRA. Baytank's argument is that the absence of such an instruction allows felony conviction of an "innocent" person contrary to our en banc decision in *United States v. Anderson*, 885 F.2d 1248 (5th Cir.1989). Given that the court here also instructed—sufficiently, in light of the absence of objection and the fact that in this respect the charge was as defendants had requested—that the jury must find that what was stored was "hazardous waste" which the defendant "knew" had the potential for harm to others or the environment (*i.e.*, that the stored waste in fact had the requisite potentially harmful physical character and defendant knew that the stored waste was potentially harmful), what Baytank is claiming is in effect the defense of mistake of law (ignorance of the regulations), not mistake of fact. In *Anderson* the defense was mistake of *fact* (the defendant thought the gun was *in fact* a semi-automatic, rather than a fully automatic); we did not hold that mistake of *law* (ignorance of the law's requirement to register a fully automatic gun or how the law defined fully automatic) was a defense. In *United States v. International Minerals*

*& Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), a case involving the shipment of sulfuric acid and hydrofluosilicic acid in violation of an Interstate Commerce Commission regulation, the Supreme Court held that the word "knowingly" in the statute pertained to knowledge of the facts, and where, as here, dangerous products were involved, anyone who was aware that he was in possession of or dealing with them must be presumed to have been aware of the regulation. A majority of the circuits have adopted a similar approach under the RCRA. *See, e.g., United States v. Hoflin*, 880 F.2d 1033, 1039 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990) (RCRA) (indicating an instruction that defendant knew the substance "had the potential to be harmful to others or to the environment" was sufficient; no requirement to have knowledge of lack of permit, and, inferentially, none to know the waste was listed by EPA as hazardous under the RCRA); *United States v. Greer*, 850 F.2d 1447, 1450 (11th Cir.1988) (similar, but instructions as such not in issue); *United States v. Dee*, 912 F.2d 741, 745 (4th Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991) (defendant does *not* have to know "that regulations existed listing and identifying the chemical wastes as RCRA hazardous wastes," but *does* have to know that chemicals in question are "hazardous," but apparently approves *Hoflin* and *Greer* definitions of "hazardous" as having "potential to harm others or the environment"); *United States v. Hayes International Corp.*, 786 F.2d 1499, 1502–5 (11th Cir.1986) (RCRA) (defendant must know there was no permit and that the waste was a mixture of paint and solvent, but need not know "that the paint waste was a hazardous waste within the meaning of the regulations" or that the regulations required a permit).

There are few authorities to the contrary. Baytank relies on *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85

---

otherwise managed"; but that omission is, if anything, favorable to the defendants, and in any event no such language was included in

their requested instructions or in their objections to the charge.

L.Ed.2d 434 (1985), which did require knowledge of the regulations in a food stamp misuse case. We find persuasive the Eleventh Circuit's conclusion in *Hayes International* that *Liparota* is not controlling in a prosecution brought under the RCRA.[24] *See Hayes International,* 786 F.2d at 1502–05. Although Baytank's proposed interpretation of the statute is plausible, it is not as readily suggested by the statutory language as was the language of the statute at issue in *Liparota.* Even more important, the *Liparota* court distinguished its case from those involving public welfare offenses, concluding that the violation of the food stamp regulations did not involve "a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." 105 S.Ct. at 2092. As the *Hayes International* court recognized, the RCRA "is undeniably a public welfare statute, involving a heavily regulated area with great ramifications for the public health and safety." 786 F.2d at 1503. *International Minerals* is much closer to the instant case, and it has not been overruled. *See also United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984) (statute forbidding knowingly making a false statement within the jurisdiction of a federal agency does not require actual knowledge of federal jurisdiction). The other case relied on by Baytank is *United States v. Johnson & Towers, Inc.,* 741 F.2d 662, 669 (3d Cir.1984), *cert. denied sub nom. Angel v. United States,* 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985), an RCRA case where in dicta the court said that to convict the defendant employees they had to know not only that their employer "did not have a permit" but also that it "was required to have a permit." While arguably the latter relates to knowing the *facts* that required

the employer to have a permit, the opinion seems also to imply a requirement of knowledge of the regulations so requiring. To the extent *Johnson & Towers* would require knowledge of the regulations, we respectfully decline to follow it. *Johnson & Towers* was rejected in *Hoflin* and, inferentially, in *Dee. Hoflin,* 880 F.2d at 1037–38; *Dee,* 912 F.2d at 745.

Here the statute—§ 6928(d)(2)(A) —does use the word "knowingly," but we conclude, as *Dee, Hoflin,* and *Hayes International* all indicate, that "knowingly" means no more than that the defendant knows factually what he is doing—storing, what is being stored, and that what is being stored factually has the potential for harm to others or the environment, and that he has no permit—and it is not required that he know that there is a regulation which says what he is storing is hazardous under the RCRA.[25] Accordingly, Baytank has not demonstrated any reversible error with respect to the district court's application of the mixture rule or its instructions relating to it.

## D. Refusal of Good Character Instruction

Baytank argues that the district court erred in refusing its request for a character evidence instruction. The district court, as Baytank concedes, admitted all the tendered character evidence, and refused to instruct on it only because it did not want to single out a particular kind of evidence; it viewed the requested instruction as permissible but not required. The cases Baytank relies on all involve either the refusal to *admit* character evidence or an instruction that affirmatively and erroneously *restricted* the consideration the jury could give to the evidence. *See Edgington v. United States,* 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896); *United States v. Ruppel,*

---

**24.** Although the prosecution in *Hayes International* was brought under § 6928(d)(1), the relevant wording is virtually identical to that of § 6928(d)(2).

**25.** Where a defendant knew of the chemical, but did *not* know it had "the potential"—or it may well be (if·properly preserved) "the substantial potential"—to be harmful to others or to the

environment" (or perhaps, if requested, to be, as § 6903(5) says, a "hazard to human health or the environment when improperly ... stored ... or otherwise managed"), then a finding that the defendant knew that the regulations listed it as a hazardous waste under the RCRA might be both required and sufficient. We need not decide that question here, however.

666 F.2d 261, 273 (5th Cir. Unit A), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982); *United States v. Hewitt,* 634 F.2d 277, 278–79 (5th Cir. Unit A 1981); *United States v. Callahan,* 588 F.2d 1078, 1083–86 (5th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *see also United States v. Burke,* 781 F.2d 1234 (7th Cir.1985) (collecting and discussing cases).

In *Hewitt,* this Court stated that "[i]n some circumstances, evidence of good character may of itself create a reasonable doubt as to guilt, and the jury must be appropriately instructed." 634 F.2d at 278 (citing *Callahan,* 588 F.2d at 1083–86; *Edgington, supra*). This Court's dictum in *Hewitt* notwithstanding, Baytank has not cited a single case (and we know of none) where this Court or the Supreme Court has found reversible error in the refusal to *give* a character instruction, as opposed to the refusal to admit character evidence or the giving of an erroneous character instruction. To the contrary, this Court has found a district court's refusal to give a character instruction, although legally correct and not otherwise substantially covered in the jury charge, not to have been an abuse of discretion. *United States v. Hunt,* 794 F.2d 1095, 1099 (5th Cir.1986). In *Hunt,* we held that an abuse of discretion would occur only if the failure to give the instruction prevented the jury from considering the defense. *Id.* at 1097.

■ We find no abuse of discretion here. Baytank and its codefendants were able to present their character evidence and argue it to the jury, no instruction restricted the jury's consideration of the evidence, and the jury *was* instructed to make *its* determinations "from the evidence in the case." Furthermore, it does not appear

that character evidence was central or crucial to this case.[26]

### E. Sufficiency of the Evidence

Finally, in an argument to which it devotes only about one page in its 48–page opening brief, Baytank argues that the district court erred in denying its motion for a judgment of acquittal, or, in the alternative, for a new trial on counts 32 and 33. Baytank contends the evidence was insufficient to sustain a conviction on either count. We disagree.

■ As to count 32, Baytank argues that no samples of the actual contents of the drums were put into evidence, that some drums contained nonhazardous solvents, and that drums containing ethylene dibromide (EDB), a listed hazardous chemical, 40 C.F.R. § 261.33,[27] were held not for disposal but for delivery to Dow Chemical for testing to determine whether they could be recycled.

The government admits no drum samples were taken, but relies on Baytank records, and testimony as to its practices at the times charged, to show that the drums were used to store the "slops" or residue of hazardous chemicals that had been extracted either for sampling or line cleaning purposes. We agree that these documents, including drum inventories, a hazardous waste log, and internal memoranda, as well as the testimony at trial, all amply demonstrate that many of these drums containing hazardous wastes were stored for longer than 90 days. Other testimony and physical and documentary evidence, including photographs of leaking, dented, and rusted drums, clearly show that the safe storage requirements of 40 C.F.R. § 262.34(a) were not met. As it is undisputed that Baytank did not have a permit, either is sufficient to prove a violation of § 6928(d)(2)(A).[28]

---

**26.** Although we do not decide the issue, we observe that we have not found or been cited to any authority indicating that a corporate or institutional defendant such as Baytank is even entitled to consideration of character evidence.

**27.** The listing of the chemical in 40 C.F.R. § 261.33 (1984) as "*etylene* dibromide" appears to have been a mere typographical error.

**28.** Baytank makes a passing reference to testimony that the EDB drums were intended not for disposal but for recycling by Dow. However, it appears that while some of the drums may have been offered to Dow for this purpose, as Dow's Mr. Berry testified, nevertheless Berry further testified that the EDB drums were so contaminated they could not have been recycled by anyone and were eventually disposed of by incineration. In any event, Baytank does not

With respect to count 33, Baytank asserts there was no evidence that the rinsates and storm water in the tanks were actually hazardous, or that Baytank knew this or knew that the regulations (apparently the mixture rule) classified this material as hazardous waste. We disagree. The evidence, including the testimony of Baytank employees and Baytank's own wastewater analyses, establishes that Baytank knew that the tanks contained some EPA-listed hazardous chemicals, as well as water, and was aware (or at least had a copy) of EPA regulations classifying such matter as hazardous.

Baytank also claims that its records show that at least every 90 days (perhaps monthly) the tanks were emptied. The records do not show this, however, but only show that some waste water was taken out of the tanks (without showing that they were emptied) with this frequency. It appears thousands of gallons were left in the tanks in some of these instances. Also, it was shown that the tanks did not bear labels identifying their contents as hazardous or the proper date information. The improper labeling alone would suffice to sustain the conviction, even if the storage was not for longer than 90 days.

As to the quantities of listed chemicals in the tanks, sampling data indicate that between 1.9% and 2.4% of certain tanks consisted of acrylonitrile, a chemical which is listed by EPA as a hazardous waste. 40 C.F.R. § 261.33(f). As some of these tanks contained as much as 500 to 1,000 tons, the actual amount of listed chemicals in a tank would be in the range of 9 to 24 tons. Even Baytank's own samples showed nearly one ton of acrylonitrile in one tank.

Clearly the jury could find here that there were more than insignificant or *de minimus* amounts of hazardous listed chemicals in the tanks. Given Baytank's own sampling and possession of the EPA regulations, we also conclude that the jury could properly find that Baytank knew that the contents of the tanks were hazardous (and indeed knew that the EPA regulations treated them as hazardous).[29]

The evidence is clearly sufficient to sustain a finding that Baytank knowingly stored hazardous wastes in drums and tanks without a permit in violation of the safe storage and 90–day limit conditions. Accordingly, the evidence is sufficient to support Baytank's convictions, and the district court did not err in denying Baytank's motion for judgment of acquittal on counts 32 and 33.

Although in Part III we sustain, under an abuse of discretion standard, the district court's *grant* of a new trial to the individual defendants on these (as well as other) counts, Baytank has failed to make even a colorable claim—other than its sufficiency of the evidence argument, which we reject—that the district court abused its discretion in *denying* Baytank a new trial on these counts. Accordingly, we also affirm the district court's denial with respect to counts 32 and 33 of Baytank's alternative motion for a new trial.

We affirm Baytank's conviction on counts 32 and 33.

### Part II—Mandamus

The government seeks mandamus to correct the district court's refusal to impose the § 3013(a)(2)(B) mandatory

---

explain why the permit requirements would not be applicable if the waste was being stored pending recycling instead of pending disposal. The defendants were charged under the RCRA with *storage* without a permit, and the evidence at trial demonstrated that neither of the two requirements for storage without a permit (less than 90 days and compliance with safe storage regulations) had been met. The RCRA defines storage broadly, and does not limit its meaning to storage in preparation for disposal:

"The term 'storage,' when used in connection with hazardous waste, means the containment of hazardous waste, either on a tempo-

rary basis or for a period of years, in such a manner as not to constitute disposal of hazardous waste." 42 U.S.C. § 6903(33).

**29.** We do not find the classification of these wastes as nonhazardous by the Texas Department of Water Resources (now the Texas Water Commission) to be determinative or even significantly persuasive. As the testimony at trial demonstrated, the classification was the registrant's (Baytank's) responsibility, and the Commission typically relied on the classifications provided by the registrants.

$200 per count special assessment against Baytank on the two counts it left standing. The district court relied on the Ninth Circuit's decision in *United States v. Munoz–Flores*, 863 F.2d 654 (1989), which held that § 3013 was a revenue-raising measure that had unconstitutionally originated in the Senate, rather than in the House of Representatives. *See* U.S. Const. Article I, Section 7. This Court subsequently rejected the Ninth Circuit's decision in *United States v. Herrada*, 887 F.2d 524 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2565, 109 L.Ed.2d 748 (1990), and the Supreme Court has reversed the Ninth Circuit's decision and held § 3013 constitutional. *United States v. Munoz–Flores,* —— U.S. ——, 110 S.Ct. 1964, 1974, 109 L.Ed.2d 384 (1990). The district court's erroneous refusal to impose the mandatory special assessment in this pre-Sentencing Guidelines case is properly corrected by the exercise of this Court's mandamus jurisdiction under the All Writs Act, 28 U.S.C. § 1651, as the government is otherwise unable to seek review of a sentence imposed in violation of law. *See Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 73, 61 L.Ed. 129 (1916); *United States v. Jackson,* 550 F.2d 830, 831 (2d Cir.1977).

### Part III—Government Appeal

#### A. Judgment of Acquittal Counts 32 and 33

The government argues that the district court erred in its post-verdict granting Nordberg and Johnsen a judgment of acquittal on counts 32 and 33 (the RCRA counts). The district court assigned no reasons for its action in this respect.

■ The decision of a trial court to grant a judgment of acquittal following a jury's guilty verdict is entitled to no deference. *Hayes International Corp.,* 786 F.2d at 1500 (11th Cir.1986); *see United States v. Burns,* 597 F.2d 939, 941 (5th Cir.1979), *cited in Hayes International.* Rather, the appellate court, applying the same standard as the trial court, must determine "whether the relevant evidence, viewed in a light most favorable to the Government, could be accepted by a jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Varkonyi,* 611 F.2d 84, 85 (5th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) (footnote omitted), *aff'd on other grounds,* 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1983).

In part I.E., *supra,* we have already rejected Baytank's arguments that the evidence was insufficient to sustain its conviction on counts 32 and 33. Defendants Nordberg and Johnsen rely almost exclusively on those very same arguments (*i.e.,* that no criminal violation occurred) to support their contention that the district court erred in not granting them a judgment of acquittal.

In finding the evidence sufficient to support Baytank's conviction, we have necessarily determined that the jury could reasonably have concluded that (1) hazardous wastes were knowingly stored at Baytank during the relevant time periods, and (2) the storage was without a permit and in violation of EPA regulations. The only basis for convicting Baytank and yet acquitting Nordberg and Johnsen would be a conclusion that these two men lacked knowing personal involvement in the offenses.

■ We find there was sufficient evidence to connect Nordberg and Johnsen with the violations charged in counts 32 and 33. There was evidence that during the periods covered by those counts both individuals were intimately versed in and responsible for Baytank's operations. Johnsen, as Operations Manager, had direct responsibility for most of the facility's day-to-day operations, including the filing

of environmental compliance forms. Nordberg, as Executive Vice President, also was involved in the operations and had submitted the application for an NPDES permit under the Clean Water Act. The testimony was sufficient to allow the conclusion that both Nordberg and Johnsen knew of the storage of hazardous wastes in violation of the requirements for storage without a permit. Given the evidence of their detailed knowledge of and control over the storage operations at Baytank, the jury was entitled to conclude that they participated in the illegal storage charged in counts 32 and 33.

Accordingly, we reverse the judgments of acquittal granted to Nordberg and Johnsen on counts 32 and 33.

## B. District Court Grant of New Trials

As noted, except for counts 32 and 33, the district court granted all of the defendants new trials on all counts on which the jury returned a verdict of guilty. The individual defendants convicted on counts 32 and 33, Nordberg and Johnsen, were granted conditional new trials on those counts in the event their judgments of acquittal were reversed on appeal. The government appeals all of these new trial grants.

We review the district court's grant of a new trial for abuse of discretion. *United States v. Logan,* 861 F.2d 859, 863 (5th Cir.1988); *United States v. Leal,* 781 F.2d 1108, 1110 (5th Cir.), *cert. denied,* 479 U.S. 831, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986). Rule 33 of the Federal Rules of Criminal Procedure does not require written reasons upon the grant of a new trial. Although written reasons would obviously have been helpful in this case, none were furnished. Nonetheless, we have been able, through an examination of the record and the statements of the court and counsel at the hearing at which the motion for a new trial was argued and granted, to determine the concerns of the district court that apparently prompted it to grant the new trial. We address these in turn.

### 1. Motive argument.

The district court appears to have been concerned that the government improperly argued a financial motive for the violations—saving money—without having adequately established it at trial. The government argued that Baytank attempted to save money in the construction and operation of its facility at the expense of the environment. The government contends that although it was not required to prove motive, it was entitled to argue it based on the evidence.

We agree. The district court focused on Baytank's decision to forego its original plans to construct a pipeline to transport the wastes, relying instead on transportation by truck. The court concluded that a pipeline would ultimately have been less expensive, and that consequently Baytank's action did not support the government's motive argument. The court neglected two considerations, however: first, the cost of *operating* the pipeline, as well as the cost of building it, and second, that construction of the pipeline, unlike transportation by truck, requires a substantial *up-front* capital expenditure. Taking those considerations into account, Baytank's failure to construct the pipeline certainly does not so undercut the government's motive theory as to render it an improper subject for argument. The defendants did not object to the government's motive argument or make it a basis for their new trial motion (nor did the court question it when made). Thus, the error perceived post-trial by the district court was in fact not an error at all and did not prejudice the defendants in their defense. Moreover, the district court did not grant Baytank a new trial as to either of counts 32 or 33, and the motive argument had at least as much relevance to those counts as to the others (and the district court expressed no contrary view). Accordingly, the grant of a new trial to Baytank will not be sustained on this ground.[30] *Logan,* 861 F.2d at 864–65 (trial court abused its discretion in granting new trial on basis of ineffective assistance of counsel where it failed

---

30. We sustain the grant of the new trial to the

individual defendants on another ground.

properly to apply the prejudice prong of the *Strickland* test).

### 2. Jury confusion.

This was a complex case, originally involving 21 defendants and a 37–count indictment, and it required the jury to apply some rather technical evidence, statutes, and regulations. From our reading of the jury's verdict, the jury appears to have performed its duty well. We do not criticize the jury's performance in this case, nor, as we read the record, does the district court.

Nonetheless, we cannot wholly discount the possibility of some jury confusion as to the individual defendants in a case as unwieldy as this. Where our review is limited to abuse of discretion, we hesitate in a matter of this kind to second-guess the determination of the district judge, who tried the case to the jury over a four-week period and clearly was in the best position to gauge the trial atmosphere and the jury's performance.

█ Given the objective indications that the jury was *not* confused, this is indeed a close question. Nevertheless, we ultimately cannot say that the district court abused its discretion in granting the individual defendants a new trial on the basis of its perception of jury confusion. The jury confusion concern does not support the grant of the new trial to the corporate defendant, Baytank, however. If it did, jury confusion would necessarily appear to have infected all counts, and the district court would have granted Baytank a new trial on counts 32 and 33 as well as the other counts. Moreover, Baytank's relationship to the charged offenses is constant and markedly different from that of the individual defendants. It was established beyond reasonable doubt and never contested that Baytank was at all times the sole owner and operator of the entire facility; it alone

was the permittee in the relevant permits; the pollutants discharged, the hazardous chemical released, and the hazardous wastes stored were Baytank's, and the discharges, release, and storage were operations conducted by Baytank on its premises and with its equipment. The individual defendants' relationships to the offenses arises only out of their role as employees of Baytank, and their positions and responsibilities were not constant throughout the entire period in question, nor were they the only responsible individuals with reference to the various counts on which guilty verdicts were returned. There really could have been no confusion as to Baytank. Though we are skeptical that there was as to the individual defendants, we are unable to so clearly rule that out as to warrant setting aside the new trial as to those defendants.

### 3. Specific intent.

█ The district court concluded that it should have instructed the jury that it had to find the specific intent not to report in order to convict the defendants for failing to file the discharge monitoring reports charged in count 27. In so concluding, the court reasoned that willfulness must be shown in order to prove a criminal violation of the currency transaction reporting requirements. 31 U.S.C. § 5322; *United States v. Granda*, 565 F.2d 922, 926 (5th Cir.1978) (construing § 5322's predecessor, 31 U.S.C. § 1058.[31] Unlike the currency reporting statutes, however, the statute at issue for count 27, the Clean Water Act, expressly penalizes negligent as well as willful violations. It provided (at the time of the events in question here) for criminal penalties for "[a]ny person who willfully *or negligently* violates ... any permit condition ... in a permit issued under section 1342 of this title...." § 1319(c)(1) (emphasis added).[32] For such an offense, there is

---

**31.** Civil penalties for currency transaction reporting violations are authorized in 31 U.S.C. § 5321. Even those penalties require a showing of willfulness, except a provision added in 1986 which authorizes a civil penalty not to exceed $500 for a negligent violation. 31 U.S.C. § 5321(a)(6).

**32.** The wording has now been changed by 1987 amendments to the Clean Water Act, but it still criminalizes negligent violations, although it now provides for enhanced penalties for knowing violations.

no constitutional infirmity in not requiring proof of specific intent. *See Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 223–27, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring); *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922); *United States v. Mullens*, 583 F.2d 134, 138 (5th Cir.1978). Accordingly, failure to require specific intent in the instructions on count 27 was not error and therefore does not support the grant of the new trial. *See Logan*, 861 F.2d at 864–65.

The district court also appears to have been concerned that it may have given an erroneous instruction on aiding and abetting under 18 U.S.C. § 2. This concern applies to all counts, including count 27. We have stated that conviction as an aider or abettor, even for a general intent crime, requires a showing of specific intent. *See, e.g., United States v. Lindell,* 881 F.2d 1313, 1323 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990). The defendants argue that the district court inadequately instructed on the "willfulness" required for conviction as an aider or abettor, confusing it with the mental state of "knowledge." *See United States v. Burroughs*, 876 F.2d 366, 368–69 (5th Cir.1989). They also question whether one can be an aider or abettor to a negligent violation, and they suggest the instructions on the various mental states may have confused the jury.

The aider and abettor instruction was not applicable to Baytank; accordingly, its new trial cannot be sustained on this ground. Although the arguments on the aiding and abetting instruction with respect to the individual defendants (to whom the instruction was applicable) are not without some force, we need not decide whether they are sufficient to sustain the grant of a new trial in light of our decision to uphold the individual defendants' new trial on the not wholly unrelated jury confusion issue.

4. Insufficiency of evidence—count 29.

■■■ Count 29 charged that Baytank and Johnsen knowingly failed to timely report to the National Response Center an April 27, 1985 unpermitted "release" into "the environment" at the Baytank facility of a reportable quantity of a hazardous substance, namely over 100 pounds of acrylonitrile, contrary to § 9603(b)(3). Having already upheld on other grounds the grant of a new trial to Johnsen, we consider the new trial on this count only as to Baytank. The government's evidence showed that some 4,000 pounds of acrylonitrile—a listed hazardous substance whose reportable quantity is 100 pounds—overflowed a Baytank tank on April 27, 1985, that several responsible personnel of Baytank knew about this spill the same day, but that it was not timely reported. The chemical spilled into the "tank bay," a moat-like area around the tank open to the atmosphere. The government's evidence also showed that within the first hour after the overflow some 1,800 pounds of the spilled chemical would have evaporated from the tank bay into the ambient air, and that the air containing this chemical traveled to the neighboring Celanese plant where employees noticed it and experienced resultant adverse effects. The district court instructed the jury that a reportable release into the environment included an "escaping" into the "ambient air," but that a release into a "contained structure ... like tank bays" was *not* a release into the environment "unless you find that a reportable quantity of the chemical evaporated or otherwise traveled beyond the confines of the containment structure."

In granting a new trial the district court expressed doubt about the "level of proof" on count 29. The court noted that the testimony of the government's expert concerning the quantities that evaporated into the air was based on an assumption that 4,000 pounds had spilled into the tank bay, as to which latter amount the expert gave no opinion of his own. The district court found this "a serious defect" because the evidence of the quantity spilling into the tank bay was, in the court's view, mere "folk estimates" and "quantifications ... in the industrial context where somebody scratches himself, looks at it, and says that's about X." However, Baytank's own written records show without contradiction that it contemporaneously estimated and

subsequently reported to OSHA that "approximately 4,000 lbs." spilled on this occasion. A witness from the Celanese plant smelled the chemical there, looked for its cause, then shortly thereafter observed ongoing overflow ("like a curtain of liquid") from the Baytank tank at an estimated rate of 100 to 150 *gallons* a minute, with the spilling continuing until some 10 to 12 minutes had elapsed after the witness had first smelled it. Baytank written records reflect that the spilling went on for 15 minutes. Baytank records also reflect that three hours after the spill the ambient air in areas west and north of the tank bay contained respectively 400 and 800 parts per million of acrylonitrile, but that some eight hours after the spill that substance was not detectable in the ambient air at those same locations. Importantly, there was absolutely no evidence that the 4,000 pound figure was too high or was for any reason unreliable. Moreover, the 4,000 pound figure did not have to approach precision to sustain a finding that from it at least 100 pounds evaporated into the ambient air, as the government's expert stated that 1,800 pounds would evaporate in the first hour from the 4,000 pounds he assumed to have been spilled into the tank bay.

The evidence was clearly more than amply sufficient for the jury to conclude beyond a reasonable doubt that approximately 4,000 pounds spilled into the tank bay. The district court's determination that this undisputed and essentially unchallenged evidence was so weak as to justify a new trial is not supportable (and does not purport to be supported) by considerations of witness demeanor or trial atmospherics. We recognize the district court's especially broad discretion on these matters, but here we are driven to conclude that that discretion was clearly abused. Although we have not previously set aside a new trial granted on such a ground, the Eleventh Circuit has. *United States v. Martinez*, 763 F.2d 1297, 1312–14 (11th Cir.1985). *Cf. United States v. Kuzniar*, 881 F.2d 466, 470–71 (7th Cir.1989).[33]

The grant of new trial to Baytank on count 29 cannot stand.

### 5. New trial—summary.

We sustain the district court's grant of a new trial to Johnsen, Nordberg, and Gore. However, we reverse the grant of a new trial to Baytank on counts 20 through 24, 27, and 29, as the reasons given are either inapplicable to Baytank, legally erroneous, or, in the case of count 29, constitute a clear abuse of discretion.

### Conclusion

Baytank's convictions on counts 32 and 33 are affirmed. The government's petition for writ of mandamus is granted, and the district court shall modify Baytank's sentence so as to include the $200 special assessment on each of these counts as called for by § 3013(a)(2)(B). The district court's grant of a new trial to Baytank on counts 20 through 24, 27, and 29 is reversed, and as to those counts the cause against Baytank is remanded for reinstatement of the jury verdict against Baytank and sentencing and entry of judgment of

**33.** The district court also observed that "4,000 gallons or 4,000 pounds, it was one or the other, being in the tank bays does not necessarily translate to a hundred pounds of vapor at Celanese." But that is legally irrelevant. All the government was required to prove, and the jury to find, was that at least 100 pounds evaporated from the tank bay into the ambient air, not that such a quantity left the borders of the Baytank property and went over the Celanese land.

That *at least* 100 pounds did evaporate into the ambient (and wholly uncontained) air is well supported by the government's expert (who estimated that 1,800 pounds evaporated within the first hour; thereafter evaporation would be at a lower rate), with circumstantial corroboration by parts per million measurements in the vicinity of the tank after the spill, testimony by the Celanese employee, and Baytank's records (reflecting "injuries: vapor exposure to employees of another company downwind of spill—three people"). There was *no* evidence tending to indicate that the amount of evaporation was likely not as much as 100 pounds *or* that it could not be concluded with reasonable confidence that more than 100 pounds evaporated or that there was any meaningful doubt on that score. While the government's expert admitted that his figures had a 10 to 40% range of error (defendants' assertion of 80% relates to a clearly distinct matter not involved in count 29 and was not a range of error in any event), that is ultimately insignificant: even a 90% error factor would produce 180 pounds.

conviction. The district court's post-verdict judgment of acquittal of Nordberg and Johnsen on counts 32 and 33 is reversed. The district court's grant of a new trial to Nordberg, Johnsen, and Gore on each count of which the jury found them guilty is affirmed, and the cause as to Nordberg, Johnsen, and Gore is remanded for the new trial as thus ordered.

AFFIRMED in part; REVERSED and REMANDED in part; MANDAMUS GRANTED.