**Mark Anthony SLOTT, Thurmond W. Gentry, and Capitol Electroplating, Inc., Appellants**

v.

**The STATE of Texas, Appellee.**

Nos. 14–02–01294–CR, 14–02–01295–CR, 14–02–01296–CR, 14–02–01297–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 12, 2004.

Edward M. Chernoff and Dane Michael
Johnson, Houston, for appellants.

Roger A. Haseman, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this appeal, we examine whether an offense under Chapter 7 of the Texas Water Code occurred within the limitations period and whether the State presented sufficient evidence to support appellants' convictions pursuant to that Chapter. We also examine whether the jury was correctly charged regarding the State's burden of proof.

Appellants Mark Anthony Slott ("Slott"), Thurmond W. Gentry, ("Gentry") and Capitol Electroplating, Inc. ("Capitol") entered pleas of not guilty to two offenses: (1) intentionally disposing of hazardous waste, alleged to have occurred on August 10, 1998, and (2) intentionally disposing and/or storing hazardous wastes, alleged to have occurred on November 19, 1998. A jury convicted Capitol of disposing of hazardous waste on August 10, 1998, and convicted Slott, Gentry, and Capitol of disposing and/or storing hazardous wastes on November 19, 1998. Because the jury could not reach a verdict on the August indictments against Slott and Gentry, the trial court granted a mistrial on those indictments.

The trial court assessed Slott's punishment at three years' confinement, probated for three years, and Gentry's punishment at five years' confinement, probated for five years. The court fined Capitol $50,000 for each offense. Regarding the August 10, 1998 offense, Capitol argues the evidence is legally and factually insufficient to support its conviction, and the trial court erred in refusing to instruct the jury on the statute of limitations. Regarding the November 19, 1998 offense, appellants contend (1) the evidence is legally and factually insufficient to support the convictions against them for the offense of disposing and/or storing hazardous wastes, and (2) the trial court erred in instructing the jury that the State did not have to prove appellants knew the material disposed of and/or stored was hazardous. We reverse and render judgment of acquittal for the August 10, 1998 disposal conviction against Capitol because the state failed to prove that the alleged disposal was within the limitations period. We affirm the judgments in the remaining cases.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Capitol is a corporation in the business of chrome plating oil field equipment, and its sole shareholder is Thurmond Gentry. Mark Slott manages Capitol's waste disposal. In the process of electroplating, sand is used to clean certain products. During that cleaning process, chrome is often spilled and must be disposed of in a manner that avoids contamination of the environment. In June 1998, Robert Broussard, who had been hired by Gentry to haul some sand, transported and disposed of several drums of sand for Capitol at the Tidwell Dirt Yard. Gentry paid Broussard, and Slott supervised the loading of the drums into Broussard's truck.

On August 10, 1998, Joe Vasquez,[1] an Environmental Quality Specialist for the City of Houston, drove by the Tidwell Dirt Yard on his way to another job site. Vas-

---

1. In its brief, the State asserts the record incorrectly referred to Joe Bosques as Joe Vasquez. Because the record has not been corrected, for purposes of this opinion, we will refer to the name used in the record.

quez testified he was familiar with electro-plating waste and that a particular pile of sand at the dirt yard appeared to be a chrome sludge mixture. He took a sample of the sand, tested it, and discovered it contained 456 milligrams per liter of chromium, exceeding the level defined by the EPA as hazardous waste.[2] Sergeant Michael Walsh, an investigator with the Houston Police Department Environmental Investigations Unit, determined that the contaminated sand had originated at Capitol. On November 19, 1998, Walsh executed a search warrant at Capitol's premises, taking several samples from the plant. Three of the samples tested at toxic levels for chromium. One sample came from a drum of floor-dry absorbent material, one from a drum of stripping fluid, and one from underneath a dumpster.

After a jury trial, appellants were convicted as noted and this appeal ensued.

## II. ANALYSIS

### A. August 10, 1998 Disposal

In its first and second issues, Capitol contends the evidence is legally and factually insufficient to support a conviction for intentionally or knowingly disposing of hazardous waste on August 10, 1998. In its third issue concerning the August offense, Capitol contends the trial court erred in refusing a jury instruction on the statute of limitations. Because Capitol's third issue is dispositive regarding the August offense, we address that issue first.

In June 1998, Broussard disposed of contaminated sand from Capitol at the Tidwell Dirt Yard. On August 10, 1998, Vasquez discovered the sand and determined that it contained hazardous waste. On July 20, 2001, Capitol was indicted for the unlawful disposal of the sand.[3] Capitol contends that because the disposal of the sand occurred in June 1998, the indictment on July 20, 2001 was not within the three-year limitations period.[4] See TEX.CODE CRIM. PROC. ANN. § 12.01(6) (Vernon Supp. 2004). We agree.

The indictment charged that Capitol disposed of or caused to be disposed of hazardous waste on or about August 10, 1998. The "on or about" language in an indictment permits the State to prove a date other than the date alleged, as long as the date proved is before presentment of the indictment and within the applicable statute of limitations. *L.B. Foster Co. v. State*, 106 S.W.3d 194, 200 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd) (citing *Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App.1997)). Because the indictment was presented on July 20, 2001, the State was required to show that Capitol committed the offense of knowingly disposing of a hazardous waste on or after July 20, 1998, but before July 20, 2001.[5]

2. Five milligrams per liter is the limit of toxicity for chromium set by the Texas Natural Resource Conservation Commission ("TNRCC") and the United States Environmental Protection Agency ("EPA").

3. A corporation may be criminally liable if (1) the conduct constituting the offense is performed by an agent acting on behalf of the corporation and within the scope of his office or employment, and (2) the commission of the offense is authorized, requested, commanded, performed, or recklessly tolerated by a high managerial agent acting on behalf of the corporation and within the scope of his office of employment. TEX. PEN.CODE ANN. § 7.22 (Vernon 2004).

4. A violation of the Water Code section 7.162(a)(2) is a felony with a three-year statute of limitations. TEX. WATER CODE ANN. § 7.162(a)(2) (Vernon 2004); TEX.CODE CRIM. PROC. ANN. art. 12.01(6) (Vernon 2004).

5. If a defendant requests a jury instruction on its limitations defense and there is some evidence that prosecution is time-barred, the

The evidence is undisputed that the contaminated sand was delivered to the Tidwell Dirt Yard in June 1998. Thus, the disposal of the hazardous waste occurred at a time outside the limitations period. Nevertheless, the State contends that hazardous chromium from the sand continued to leak into the soil and, until the waste was remediated, Capitol continued to dispose of the waste by permitting it to passively migrate into the soil. The State's argument, however, was expressly rejected by our sister court in *L.B. Foster*, 106 S.W.3d at 207. In that case, the First Court of Appeals held:

> We conclude that, for purposes of criminal prosecutions under Water Code subsection 7.162(a)(2), the term "disposal" does not include the passive disposal of hazardous wastes. In other words, a "disposal" of hazardous waste under section 7.162 requires more than the passive migration of waste through the soil unaided by affirmative human conduct. Some form of affirmative human conduct must accompany a disposal for it to rise to the level of criminal culpability.

*Id.*

The State asks this court to conduct a different analysis than used in *L.B. Foster* and to find that disposing of hazardous waste becomes a continuing offense when the waste is permitted to passively migrate into the soil. The State argues the First Court of Appeals failed to consider several federal cases interpreting "disposal" under the Resource Conservation and Recovery Act ("RCRA"). 42 U.S.C. §§ 6901–6992k (2003). The definition of "disposal" found in the RCRA is almost identical to the definition of disposal found in the Water Code.

The cases cited by the State have primarily arisen in one of two contexts. The first involves a citizen's suit under section 7002 of RCRA. 42 U.S.C. § 6972 (2003). That section authorizes any person to bring a civil action against "any person" alleged to be in violation of an RCRA permit, regulation, or standard. *Id.* § 6972(a). Several courts, in considering such cases, have concluded that passive migration of previously dumped waste constitutes an ongoing violation of the statute. *See City of Toledo v. Beazer Materials & Servs., Inc.*, 833 F.Supp. 646, 656 (N.D.Ohio 1993) (holding that the prior disposal of waste is an ongoing violation until the proper disposal procedures are put into effect or the hazardous waste is cleaned up); *Gache v. Town of Harrison, N.Y.*, 813 F.Supp. 1037, 1042 (S.D.N.Y. 1993) (same); *Acme Printing Ink Co. v. Menard, Inc.*, 812 F.Supp. 1498, 1512 (E.D.Wis.1992) (stating leaking of hazardous substances may constitute a continuous or intermittent violation).

The second context involves remediation actions brought by the EPA under RCRA section 7003. That section permits the EPA to seek injunctive relief restraining further violation of the RCRA where there is an "imminent and substantial endangerment" to health or the environment. 42 U.S.C. § 6973(a) (2003). Several courts have determined that passive migration at an inactive disposal site constitutes an imminent and substantial endangerment under the RCRA. *See United States v. Price*, 523 F.Supp. 1055, 1071 (D.N.J.1981), *aff'd*, 688 F.2d 204, 214 (3rd Cir.1982) (holding that section 7003 authorizes relief restraining further leaking of waste from a landfill, and noting that section 7003 authorizes a general cleanup of even dormant waste

State must then prove beyond a reasonable doubt that prosecution is not barred by limitations. *Proctor v. State*, 967 S.W.2d 840, 844

(Tex.Crim.App.1998). Capitol requested a limitations instruction, which the trial court refused.

sites if necessary to cure a present threat to public health or the environment); *United States v. Conservation Chem. Co.,* 619 F.Supp. 162, 200 (D.Mo.1985) (disposal occurs when wastes migrate from their initial location); *but see United States v. Wade,* 546 F.Supp. 785, 790 (E.D.Pa.1982) (noting in dicta that leaking of previously dumped waste does not constitute disposal).

Also, in another case, not brought under section 7002 or 7003, the issue was whether the EPA could, under section 3008 of RCRA, enjoin a defendant to enforce state regulations. *See United States v. Power Eng'g Co.,* 10 F.Supp.2d 1145, 1146 (D.Co. 1998); *see also* 42 U.S.C. § 6928 (2003). Specifically, the EPA sought compliance with state regulations requiring financial assurances from owners and operators of hazardous waste facilities to document they had sufficient resources to close their facilities and pay potential third-party claims. *Power Eng'g,* 10 F.Supp.2d at 1146. Defendants argued that since they were not currently disposing of waste, they were operating in compliance with state regulations and exempt from financial assurance requirements. *Id.* at 1159. The court disagreed. It held that the use of the word "leaking" in the definition of disposal indicated that the leaking of hazardous waste into the groundwater constitutes continuing disposal of hazardous waste. *Id.* at 1159–60. In so holding, the court was particularly concerned that allowing the defendant to be exempt from

the financial assurance requirements would encourage others to evade or ignore the permit requirements of RCRA. *Id.* at 1162.

 These cases are distinguishable because they involve the civil liability of the polluters. None of the RCRA cases cited by the State involve the application of a statute of limitations on potential criminal prosecution. Criminal law must be sufficiently clear such that a citizen will know what the law forbids. *Long v. State,* 931 S.W.2d 285, 287 (Tex.Crim.App.1996). The purpose of a statute of limitations in the criminal context is to protect the accused from having to defend against stale criminal charges and to prevent punishment for acts committed in the remote past. *See Ibarra v. State,* 11 S.W.3d 189, 193 (Tex.Crim.App.1999).

Were we to reject the First Court of Appeals' decision in *L.B. Foster* and follow the State's reasoning, a potential polluter could be subject to criminal prosecution years after his act of disposal ended. We conclude that for purposes of criminal prosecutions under Water Code subsection 7.162(a)(2), the term "disposal" does not include the passive disposal of hazardous wastes. Instead, some form of affirmative human conduct must accompany a disposal for it to rise to the level of criminal culpability.[6] *See, e.g., L.B. Foster,* 106 S.W.3d at 207.

Here, because the act of disposal occurred in June 1998, the indictment on

---

**6.** The State cites to one unreported criminal Ohio decision in support of its contention that passive migration should be included in the definition of disposal. *See State v. Brothers,* No.2000–T–0085, 2001 WL 1602692, at *1 (Ohio App. 11 Dist. Dec.14, 2001). In that case, Brothers was convicted of illegal disposal of hazardous waste after a search warrant revealed several hundred leaking drums of hazardous waste. The Ohio court held that the continued leaking of the drums constitut-

ed a continuing offense of disposal of hazardous waste and found the indictment was brought during the appropriate limitations period. The disposal of the sand in this case was a discrete event. The court in *L.B. Foster* specifically noted that intentionally or knowingly allowing a hazardous waste to leak or otherwise escape from some form of containment could be considered a disposal for which a defendant could be prosecuted. *L.B. Foster,* 106 S.W.3d at 205 n. 11.

July 20, 2001 was not within the limitations period. Therefore, we sustain Capitol's first issue.[7]

### B. November 19, 1998 Storage and/or Disposal

#### 1. Sufficiency of the Evidence

In Slott's and Gentry's first and second issues, and in Capitol's fifth and sixth issues, appellants contend the evidence is legally and factually insufficient to support their convictions for storage and/or disposal of hazardous waste on November 19, 1998.

#### a. Standard of Review

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). In conducting this analysis, we may not reweigh the evidence and substitute our judgment for that of the jury. *Id.* The standard is the same for both direct and circumstantial evidence cases. *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App.1999).

In reviewing factual sufficiency of the evidence, we view all the evidence in a neutral light, both for and against the finding. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The evidence will not be deemed factually insufficient unless (1) it is too weak, when considered by itself, to support the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if present, is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State,* — S.W.3d —, —, No. 539–02, 2004 WL 840786, at *7 (Tex.Crim.App. Apr.21,

2004); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Even if we disagree with the verdict, our factual sufficiency review must be appropriately deferential to avoid substituting our judgment for that of the fact finder. *Clewis,* 922 S.W.2d at 133. Our evaluation should not intrude upon the fact-finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). When evaluating a factual sufficiency challenge, we must address the evidence appellant claims is the most important in allegedly undermining the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim. App.2003).

#### b. Applicable Law

Appellants were convicted of unlawfully storing and/or disposing of hazardous waste on November 19, 1998. The offense is defined in section 7.162(a)(2) of the Water Code as follows:

(a) A person commits an offense if the person, acting intentionally or knowingly with respect to the person's conduct:

\* \* \* \* \*

(2) stores ... or disposes of, or causes to be stored ... or disposed of, any hazardous waste without all permits required by the appropriate regulatory agency[.]

TEX. WATER CODE ANN. § 7.162(a)(2) (Vernon 2000). The indictment charged that appellants "[o]n or about November 19, 1998, did then and there unlawfully, intentionally and knowingly store and/or dispose of and cause to be stored and/or disposed of a hazardous waste, namely a solid waste exhibiting the toxicity characteristic for chromium, without all permits

---

**7.** Because of our disposition, we need not reach Capitol's second and third issues.

required by the appropriate regulatory agency...."

The jury was instructed that storage is defined as "the temporary holding of solid waste, after which the solid waste is processed, disposed of, or stored elsewhere." *See* Tex. Health & Safety Code Ann. § 361.003(38) (Vernon 2001). Disposal was defined as:

> [T]he discharging, depositing, injecting, dumping, spilling, leaking, or placing of solid waste or hazardous waste, whether containerized or uncontainerized, into or on land or water so that the solid waste or hazardous waste or any constituent thereof may be emitted into the air, discharged into surface water or groundwater, or introduced into the environment in any other manner.

*Id.* § 361.003(7); *See L.B. Foster Co. v. State,* 106 S.W.3d 194, 204 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (finding "disposal" as defined in Health and Safety Code applied to term in Water Code).

### c. Evidence

■ At trial, the evidence showed that, before the events in this appeal, Capitol's employees were instructed on the proper methods of storing and disposing of hazardous waste. In 1997, as the result of a Texas Natural Resource Conservation Commission ("TNRCC") investigation, Capitol hired an environmental consultant, Arthur Malone. Malone delineated separate waste streams for the facility and explained to Gentry and Bruce Glassco, the plant manager at the time,[8] that each waste stream had to be tracked separately and was not to be commingled. He also explained that the drums of waste should be labeled with an accumulation start date and a notation that the drum contained hazardous waste. He further informed them that a manifest, which tracks where and how waste has been disposed, is necessary when waste is stored or transported from the facility. Jill Burris, an investigator with the Texas Commission on Environmental Quality (formerly TNRCC), testified that disposing of hazardous waste without recording the disposal on a manifest is illegal under Water Code subsection 7.162(a)(2).

As a large-quantity generator of hazardous waste, Capitol was permitted to store hazardous waste on site for up to ninety days, after which it was required to properly dispose of the waste or obtain a permit from the State of Texas. On November 19, 1998, two containers were found to contain hazardous levels of chromium. Neither container was labeled with an accumulation start date, therefore it was impossible to determine how long the waste had been stored. Both drums contained waste that Malone had identified as hazardous waste in 1997. Appellants argue the evidence is legally and factually insufficient to prove that hazardous waste had been stored at Capitol longer than ninety days. According to appellants, the accumulation start date did not begin until the drums were full. Contrarily, Jill Burris testified that the accumulation date required on the outside of each drum should be the date the drum began to accumulate waste. However, whether the accumulation start date is calculated from the date of the first deposit or when the drum is full is not pertinent to our analysis, because appellants failed to note any accumulation dates on the drums.

Capitol's 1998 Annual Waste Summary does not reflect that any solid waste was disposed of from April 28, 1998 until No-

---

8. In 1998, Bruce Glassco left Capitol and Slott was given the duty of ensuring that Capitol's hazardous waste was properly stored and disposed of.

vember 20, 1998, indicating that Capitol stored solid waste on site for as long as seven months. Gentry testified that he mixed wastes containing chrome and that he did not place accumulation start date labels on any hazardous waste, or properly label the drums. Further, toxic levels of chromium were found in the soil underneath a dumpster at Capitol, indicating chromium had been disposed of in or near the dumpster.

In response to the State's case-in-chief, Appellants presented the testimony of Bruce Simpson, owner of a hazardous waste management company, and Gentry. Simpson testified regarding the clean-up of Capitol after the November 19, 1998 search warrant had been executed, and stated that he transported approximately 20,000 pounds of hazardous waste from Capitol in November 1998. Gentry testified that on April 28, 1998, eleven drums of solid waste were transported from Capitol.

Having reviewed this evidence in the light most favorable to the verdict, we find legally sufficient evidence to support the convictions for illegally storing and/or disposing of hazardous waste. Further, reviewing all the evidence neutrally, we find the evidence is not too weak to support the jury's finding of guilt beyond a reasonable doubt or that contrary proof was so strong that the beyond-a-reasonable-doubt standard was not met. Slott's and Gentry's first and second issues and Capitol's fifth and sixth issues are overruled.

### 2. Jury Instruction

In Slott's and Gentry's third issues and in Capitol's fourth issue, they contend the trial court erred in giving the following jury instruction:

> You are further instructed that the prosecution is not required to prove that the defendant knew that the material stored, disposed, caused to be stored or caused

to be disposed was a hazardous waste as defined, but rather the prosecution must prove that the defendant knew that the material was waste and had the potential to be harmful to others or the environment.

■ Appellants objected to the instruction and the trial court overruled their objection. We review the trial court's submission of jury instructions under an abuse of discretion standard. *Wesbrook v. State,* 29 S.W.3d 103, 122 (Tex.Crim.App. 2000).

On appeal, appellants argue this instruction effectively lowers the burden of proof for the state because it removes the culpable mental state regarding the element of "hazardous waste," thereby creating a strict liability statute for the disposal of any waste. We disagree.

■ The State was required to prove appellants intentionally or knowingly committed the offense of storage and/or disposal of hazardous waste. Storage or disposal of hazardous waste is a "nature of conduct" offense. *See* TEX. WATER CODE ANN. § 7.162(a) (Vernon 2000). The actor must act intentionally or knowingly with respect to his conduct. *Id.* A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PEN.CODE ANN. § 6.03(b) (Vernon 2003).

■ The knowledge requisite to a knowing violation of a statute is factual knowledge as opposed to knowledge of the law. *See Bryan v. United States,* 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *United States v. Baytank (Houston), Inc.,* 934 F.2d 599, 613 (5th Cir.1991). Consequently, "knowingly" means only that the defendant knows factually what he

is doing. *Baytank,* 934 F.2d at 613. It is not necessary to establish the defendant knows there is a regulation stating that what is stored or disposed of is classified as hazardous waste. *Id.* In other words, the State had to prove appellants knew they were storing or disposing of waste which was hazardous, that is, had the potential to harm others or the environment; however, the State did not have to prove appellants knew the waste was hazardous as defined in the regulations.[9] *See* TEX. WATER CODE ANN. § 7.162(1); *see, e.g., United States v. Kelly,* 167 F.3d 1176, 1180–81 (7th Cir.1999) (finding instruction regarding knowledge did not shift burden when it indicated that government did not have to prove defendant knew substance qualified as hazardous waste); *United States v. Kelley Technical Coatings, Inc.,* 157 F.3d 432, 438 (6th Cir.1998) (concluding instruction was proper because it required government to prove defendant's knowledge of the storage or disposal, his knowledge the material was waste and it was potentially harmful to others); *United States v. Laughlin,* 10 F.3d 961, 965–66 (2d Cir.1993) (finding government need only prove, regarding *mens rea,* that a defendant was aware of his act of disposing and that the substance was hazardous); *People v. Thoro Prods. Co.,* 45 P.3d 737, 744 (Colo. App.Ct.2001) (finding defendant must have known of the storing of material that was hazardous).

Examining the charge as a whole, the jury was informed that a person commits the offense if, acting intentionally or knowingly with respect to his conduct, he "stores or disposes of, or cause to be stored or disposed of, any hazardous waste without all [necessary] permits." The jury was also charged as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of November, 1998, in Harris County, Texas, the defendant, [ . . . ] did then and there unlawfully, intentionally or knowingly store or cause to be stored a hazardous waste, namely, a solid waste exhibiting the toxicity characteristic of chromium, without all permits required by the appropriate regulatory agency, namely, the Texas Natural Resource Conservation Commission; or if you find from the evidence beyond a reasonable doubt that on or about the 19th day of November, 1998, in Harris County, Texas, the defendant, . . . did then and there unlawfully, intentionally or knowingly dispose of or cause to be disposed of a hazardous waste, namely, a solid waste exhibiting the toxicity characteristic for chromium, without all permits required by the appropriate regulatory agency, namely, the Texas natural Resource Conversation Commission, then you will find the defendant guilty as charged in the indictment.

In sum, the trial court's instruction properly informed the jury that the State was required to prove appellants knew they were disposing of waste and knew the material had the potential to be harmful to others or the environment. The trial court's instruction did not negate a culpable mental state because there is no requirement that appellants know the waste was categorized by the State as a hazardous waste. *See Kelley Technical Coatings,* 157 F.3d at 440. The trial court did not abuse its discretion by submitting the instruction. Slott's and Gentry's third issues

---

**9.** Appellants contend that *L.B. Foster* requires the State prove two separate, culpable mental states. The first, that they knowingly stored or disposed of the waste, and second, that it was hazardous waste. We do not disagree. However, as shown, the State is not required to prove appellants knew the waste was "hazardous" as defined in the regulations.

are overruled. Capitol's fourth issue is overruled.

## III. CONCLUSION

For the foregoing reasons, the judgment in cause number 882770 is reversed and judgment of acquittal is rendered. The judgments in cause numbers 882771, 882762, and 882757 are affirmed.