NO. 07-09-0025-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 15, 2009

______________________________


BRIAN GARZA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 426TH DISTRICT COURT OF BELL COUNTY;

NO. 63,030; HONORABLE FANCY H. JEZEK, JUDGE

_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


OPINION


Â Â Â Â Â Â Â Â Â Â Appellant, Brian Garza, was convicted by a jury of evading arrest by use of a motor
vehicle,


 a state jail felony punishable as a third degree felony by virtue of a deadly weapon
finding.


 During the punishment phase of the trial, Appellant pled true to an enhancement
allegation


 and the jury sentenced him to seventeen years confinement. Appellant asserts
three issues asking whether: (1) the result of the proceeding would have been different had
he received effective assistance from his counsel; (2) the trial court committed error by
charging the jury with a deadly weapon instruction when evidence of actual endangerment
was factually insufficient to justify a finding that the motor vehicle was used as a deadly
weapon; and (3) the trial courtâs judgment of conviction should be modified to reflect the
correct offense level. 
Â Â Â Â Â Â Â Â Â Â Originally appealed to the 3rd Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex.
Govât Code Ann. Â§ 73.001 (Vernon 2005). We are unaware of any conflict between
precedent of the 3rd Court of Appeals and that of this Court on any relevant issue. See
Tex. R. App. P. 41.3. We modify the trial courtâs judgment and affirm as modified.
Background
Â Â Â Â Â Â Â Â Â Â In May 2008, Appellant was indicted by a Bell County Grand Jury for evading arrest
by use of a motor vehicle. The indictment alleged an offense occurring on or about April
17, 2008. The indictment also alleged Appellant used and exhibited his vehicle as a
deadly weapon during the commission of the offense and it contained an enhancement
paragraph describing a prior felony conviction.


 
Â Â Â Â Â Â Â Â Â Â I.Â Â Â Â Â Â Â Â Pretrial Proceedings
Â Â Â Â Â Â Â Â Â Â On August 21, 2008, Appellant requested notice of the Stateâs intention to use
extraneous offenses at trial. The State responded that, among other offenses, the State
intended to present evidence that Appellant was driving while intoxicated when he was
arrested on the instant offense.


 
Â Â Â Â Â Â Â Â Â Â On November 3, 2008, the trial court held a hearing on Appellantâs motion seeking
to prevent the State from offering any evidence of intoxication. Appellant asserted the
evidence was irrelevant and, if relevant, more prejudicial than probative. The State
countered that evidence of intoxication was relevant to its allegation that, in the course of
evading arrest, Appellant was operating a motor vehicle as a deadly weapon. The State
also asserted that Appellantâs breath test and his throwing beer containers from the car
while fleeing was the same transaction, contextual evidence. The State indicated there
would also be testimony by officers who believed Appellantâs physical appearance at the
time he was arrested indicated he was intoxicated, a technical supervisor of breath testing,
and the person who administered the breath test. The trial court overruled Appellantâs
objection to evidence of him throwing beer containers from his car during the chase and
withheld its ruling on the remaining objections until the State intended to proffer evidence
of Appellantâs intoxication. Prior to trial, the State filed a witness list naming Elmer Weber,
a Department of Public Safety technical supervisor over breath testing and analysis.
Â Â Â Â Â Â Â Â Â Â II.Â Â Â Â Â Â Â Trial
Â Â Â Â Â Â Â Â Â Â The following evidence was adduced at a jury trial held November 4 through 5. On
April 17, 2008, at approximately 3:20 a.m., Officer Bradford Hunt first observed Appellant
driving his vehicle very slowly. He ran Appellantâs license plate and discovered it had
expired four months earlier. In preparation for a traffic stop, he turned on the red and blue 
lights atop his patrol car. Appellant continued to drive. Officer Hunt then intermittently
beeped his siren to no avail.
Â Â Â Â Â Â Â Â Â Â Appellant stopped at a traffic light. And, when the light turned green, Appellant
remained at the intersection. Believing Appellant had finally come to a stop, Officer Hunt
turned his spotlight on Appellantâs car, called for assistance, and stood outside his vehicle
behind the driverâs door. Through the public address system mounted on the front of the
car, he commanded Appellant to: âStay right there, donât move or you are going to jail.â 
 
Â Â Â Â Â Â Â Â Â Â Appellant reacted by speeding away. Officer Hunt turned on his siren and
alternating high beam headlights in addition to the red and blue lights atop his patrol car
and initiated pursuit.


 In the next thirty minutes, Appellant engaged numerous police
officers in an eighteen mile car chase. During the pursuit, Appellantâs behavior included
speeding as fast as fifteen to twenty miles per hour over the speed limit(s) through a
residential neighborhood, road construction zone, and over highways; running stop signs;
swerving within a traffic lane; throwing beer cans from his car; driving at speeds of forty to
fifty miles per hour on deflated tires that were smoking with sparks flying from the bare
rims; and, driving on the wrong side of a highway in the direction of oncoming traffic while
crossing blind hills with very little visibility.
Â Â Â Â Â Â Â Â Â Â The car chase ended in a trailer park where Appellant was arrested. When his car
was searched, the officers found an empty can of beer and a twenty-four pack of beer
containing three unopened cans. Officer Shawana Neely, who drove the second patrol car
in pursuit behind Officer Hunt, testified that, at the time of his arrest, Appellantâs speech
was slurred, his eyes were red and glassy, he staggered when he walked, and he smelled
strongly of alcoholic beverage.



Â Â Â Â Â Â Â Â Â Â Officer Joshua Moore testified that, after he obtained Appellantâs consent, he
administered two breath tests, one at 4:30 a.m. and a second test at 4:41 a.m. Weber,
Â technical supervisor for DPSâs breath testing program, testified that the legal limit, or point
in which all individuals are deemed intoxicated, for a breath test in Texas was .080. 
Appellantâs results were .084 and .087, respectively.


 
Â Â Â Â Â Â Â Â Â Â Following the testimony, the jury found Appellant guilty of evading arrest while using
his automobile as a deadly weapon. During the punishment stage of the trial, Appellant
pled âtrueâ to a prior felony conviction alleged in the indictment


 and the trial court
instructed the jury that the maximum sentence of confinement was a term not more than
twenty years or less than two years. Thereafter, the jury sentenced Appellant to
confinement for seventeen years. The trial court issued its judgment of conviction and this
appeal followed.
Discussion
Â Â Â Â Â Â Â Â Â Â Appellant contends his counsel was ineffective because, although his counsel had
received notice the State intended to offer evidence of his intoxication at trial, his counsel
was not prepared to counter the Stateâs evidence. Appellant next contends the trial court
erred by charging the jury with a deadly weapon instruction when there was insufficient
evidence to justify a jury finding on the issue. Lastly, Appellant asserts the trial courtâs
judgment of conviction should be modified because he was convicted of a second degree
felony offense rather than a third degree felony offense as stated in the judgment. 
Â Â Â Â Â Â Â Â Â Â I.Â Â Â Â Â Â Â Â Ineffective Assistance of Counsel
Â Â Â Â Â Â Â Â Â Â We examine ineffective assistance of counsel claims by the standard enunciated 
in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)
and adopted by Texas in Hernandez v. State, 726 S.W.2d 53, 55-57 (Tex.Crim.App. 1986). 
Appellant has the burden to show by a preponderance of evidence (1) trial counselâs
performance was deficient, i.e., fell below the prevailing professional norms, and (2) the
deficiency prejudiced the defense; that is, but for the deficiency, there is a reasonable
probability that the result of the proceeding would have been different. See Thompson v.
State, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). We examine the totality of counselâs
representation to determine whether Appellant received effective assistance but do not
judge counselâs strategic decisions in hindsight. Id. at 813. Rather, counselâs conduct is
viewed with great deference. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.Crim.App.
2005). Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d
at 812. 
Â Â Â Â Â Â Â Â Â Â In the usual case in which an ineffective assistance claim is made, âthe record on
direct appeal will not be sufficient to show that counselâs representation was so deficient
and so lacking in tactical or strategic decisionmaking as to overcome the presumption that
counselâs conduct was reasonable and professional.â Bone v. State, 77 S.W.3d 828, 833
(Tex.Crim.App. 2002). This is generally the case because a silent record provides no
explanation for counselâs actions and therefore will not overcome the strong presumption
of reasonable assistance. Freeman v. State, 125 S.W.3d 505, 506 (Tex.Crim.App. 2003);
Rylander v. State, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).
Â Â Â Â Â Â Â Â Â Â This case demonstrates the âinadequacies inherent in evaluating ineffective
assistance claims on direct appeal.â Patterson v. State, 46 S.W.3d 294, 306
(Tex.App.âFort Worth 2001, no pet.).


 Appellant did not file a motion for new trial, the trial
court did not hold a hearing to determine whether Appellantâs complaints of ineffective
assistance involved actions that may, or may not, have been grounded in sound trial
strategy and the record does not reflect counselâs reasons for doing, or failing to do, the
things of which Appellant complains. 
Â Â Â Â Â Â Â Â Â Â That said, the record reflects that Appellantâs counsel had notice of the Stateâs
intention to use evidence of Appellantâs intoxication at trial as early as August 2008, nearly
three months before trial. The hearing transcript for November 3 indicates Appellantâs
counsel had adopted a strategy to keep such evidence from being admitted at trial. Prior
to the admission of the evidence on November 4, Appellantâs counsel again argued against
its admission but failed. Thereafter, having been unsuccessful in persuading the trial court
that the evidence should be excluded, Appellantâs counsel thoroughly and ably cross-examined the Stateâs primary witness regarding the reliability of breathalyzer tests and
Appellantâs breath test. Based on this record, we cannot say that Appellantâs legal
representation fell below prevailing professional norms. 
Â Â Â Â Â Â Â Â Â Â Appellant also complains that his trial counsel was ill-prepared because he failed
to procure an expert on intoxication in advance of trial to counter the Stateâs evidence. 
Trial counselâs failure to call an expert is irrelevant absent a showing that an expert witness
was available to testify on this issue and the expertâs testimony would have benefitted
Appellant. See King v. State, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983). Appellant makes
no such showing. 
Â Â Â Â Â Â Â Â Â Â On this record, to find Appellantâs counsel ineffective, we would have to engage in
prohibited speculation. See Stafford v. State, 101 S.W.3d 611, 613-14 (Tex.App.âHouston
[1st Dist.] 2003, pet. refâd). Absent evidence of counselâs strategy, we cannot denounce
counselâs actions as ineffective nor can we determine that there is a reasonable probability
that the outcome would have been different. For this reason, Appellant has not met either
prong of the Strickland test. Accordingly, Appellantâs first issue is overruled.
Â 
Â Â Â Â Â Â Â Â Â Â II.Â Â Â Â Â Â Â Jury Charge
Â Â Â Â Â Â Â Â Â Â An appellate court reviews a trial courtâs submission, or omission, of a jury
instruction under an abuse of discretion standard. See Wesbrook v. State, 29 S.W.3d 103,
122 (Tex.Crim.App. 2000); Slott v. State, 148 S.W.3d 624, 632 (Tex.App.âHouston 2004
[14th Dist.], pet. refâd). When applying this standard, we may not substitute our judgment
for that of the trial court but simply determine whether the trial courtâs ruling was arbitrary
or unreasonable. See Salazar v. State, 38 S.W.3d 141, 148 (Tex.Crim.App. 2001).
Â Â Â Â Â Â Â Â Â Â To establish a deadly weapon finding, the State must demonstrate that: (1) the
object meets the statutory definition of a dangerous weapon,


 (2) the deadly weapon was
used or exhibited âduring the transaction from whichâ the felony conviction was obtained;
Ex parte Jones, 957 S.W.2d 849, 851 (Tex.Crim.App. 1997); and (3) that people were
actually endangered, as opposed to a mere hypothetical potential for danger if others had
been present. Cates v. State, 102 S.W.3d 735, 738 (Tex.Crim.App. 2003). 
Â Â Â Â Â Â Â Â Â Â Objects that are not usually considered dangerous weapons may become so,
depending on the manner in which they are used during the commission of an offense. 
Thomas v. State, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991). A motor vehicle may
become a deadly weapon if the manner of its use is capable of causing death or serious
bodily injury. Ex parte McKithan, 838 S.W.2d 560 (Tex.Crim.App. 1992). Specific intent
to use a motor vehicle as a deadly weapon is not required. McCain v. State, 22 S.W.3d
497, 503 (Tex.Crim.App. 2000); Walker v. State, 897 S.W.2d 812, 814 (Tex.Crim.App.
1995). 
Â Â Â Â Â Â Â Â Â Â The Stateâs evidence at trial indicated that, during Officer Huntâs pursuit, Appellant
exceeded the speed limit driving through a residential area, construction zone, and over
highways and streets by as much as twenty miles per hour. He was intoxicated and
weaved within, and without, his driving lane. After his tires were deflated, he drove his
disabled vehicle on the deflated tires creating a thick smoke from burning rubber and, when
he no longer had tires, created a stream of sparks where the rimâs metal met the pavement
at speeds of forty to fifty miles per hour. He crossed the center line of a highway and drove
in the direction of approaching traffic over blind hills with limited visibility to determine
whether cars were approaching the hillâs crest from the opposite direction. He passed
vehicles at intersections where cross traffic was blocked by police officers and cars pulled
off the roadway to avoid his oncoming vehicle. At the very least, these facts raise an issue
whether the manner in which Appellant used his vehicle made it capable of causing death
or serious bodily injury.


 See Sierra v. State, 280 S.W.3d 250, 255 (Tex.Crim.App. 2009);
Drichas v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).
Â Â Â Â Â Â Â Â Â Â Appellant asserts this evidence is insufficient to raise a fact issue because it only
establishes a mere hypothetical potential for danger if others had been present. Here,
Appellantâs driving endangered not only the officers in pursuit of his vehicle but the public,
i.e., drivers who would have likely crossed his path in the absence of police intervention
at intersections and those drivers who actually pulled onto the shoulder to avoid Appellantâs
oncoming vehicle. See Sierra, 280 S.W.3d at 254-56 [collected cases cited therein]; 
Drichas, 175 S.W.3d at 798 (where defendant, in the course of evading detention with a
vehicle, led law enforcement officers on a fifteen-mile high-speed chase during which he
disregarded traffic signs and signals, drove erratically, wove between and within lanes,
turned abruptly into a construction zone, and drove on the wrong side of the highway,
Court of Criminal appeals held that his use of a motor vehicle âposed a danger to pursuing
officers and other motorists that was more than simply hypotheticalâ); Mann v. State, 13
S.W.3d 89, 92 (Tex.App.âAustin 2000), affâd, 58 S.W.3d 132 (Tex.Crim.App. 2001)
(evidence is sufficient if it raises a fact issue whether âothers were endangeredâ). 
Â Â Â Â Â Â Â Â Â Â We find that the Stateâs evidence was sufficient to create a fact issue whether
Appellantâs manner of using his car posed a danger to pursuing officers and the public that
was more than hypothetical. Accordingly, the trial court did not abuse its discretion by
issuing a deadly weapon charge to the jury. Appellantâs second issue is overruled. 
Â 

Â Â Â Â Â Â Â Â Â Â III.Â Â Â Â Â Â Judgment of Conviction
Â Â Â Â Â Â Â Â Â Â The trial courtâs Judgment of Conviction indicates Appellant was convicted of
evading arrest with a motor vehicle, a third degree felony. Appellant contends the trial
court mischaracterized his offense as a third degree felony because he was sentenced
under the punishment range applicable to a second degree felony and the sentence
actually imposed was greater than that allowed for a third degree felony.
Â Â Â Â Â Â Â Â Â Â As previously noted, Appellant was indicted for evading arrest while using a motor
vehicle, a state jail felony, under section 38.04(b)(1) of the Penal Code. In addition, the
indictment alleged the use of a motor vehicle as a deadly weapon in the commission of the
offense, making the offense punishable as a third degree felony.


 Still further, the
indictment alleged a prior felony conviction, making the offense punishable as a second
degree felony.


 
Â Â Â Â Â Â Â Â Â Â At the guilt/innocence stage of the trial, the trial court submitted to the jury the
primary offense under section 38.04(a), the use of a motor vehicle under section
38.04(b)(1), and a special issue as to whether Appellant used that vehicle as a deadly
weapon under section 12.35(c)(1). The jury found Appellant guilty and answered the
special issue in the affirmative. The trial then proceeded to the punishment phase where
the prior felony conviction came into play.
Â Â Â Â Â Â Â Â Â Â The punishment range for convictions of state jail felonies are set forth in section
12.35 of the Texas Penal Code. The statute specifies the punishment for regular or non-aggravated state jail felonies in section 12.35(a) and (b), and for aggravated state jail
felonies in section 12.35(c). 
Â Â Â Â Â Â Â Â Â Â Here, Appellant was convicted of evading arrest under section 38.04(b)(1), a state
jail felony. The nature of the offense never changed but, because of the juryâs affirmative
finding of the use of a deadly weapon during the commission of the offense, the offense
became an aggravated state jail felony punishable under section 12.35(c) as a third degree
felony. The state jail felony of which Appellant was convicted did not, however, become
a third degree felony. 
Â Â Â Â Â Â Â Â Â Â During the penalty phase, that part of the indictment alleging the prior felony
conviction was read to the jury and Appellant pled âtrueâ to these allegations. In its jury
charge, the trial court authorized the jury to assess a sentence of confinement for a term
not more than twenty years or less than two yearsâthe sentence applicable to a second
degree felony offense; pursuant to section 12.42(a)(3) of the Penal Code. Aggravated
state jail felonies, punishable under the provisions of section 12.35(c), are subject to the
habitual criminal provisions of section 12.42(a). State v. Mancuso, 919 S.W.2d 86, 90
(Tex.Crim.App. 1996). See Bunton v. State, 136 S.W.3d 355, 363 (Tex.App.âAustin 2004,
pet. refâd). 
Â Â Â Â Â Â Â Â Â Â Although Appellant was punished within the proper, applicable punishment range
based on this crime and his criminal history, he was, nonetheless, convicted of only a state
jail felony. The notation on the trial courtâs judgment indicating Appellant was convicted
of a third degree felony is a clerical error, not the product of judicial reasoning.


 Thus, we
are authorized to reform the trial courtâs judgment so that it may speak the truth. See
French v. State, 830 S.W.2d 607, 609 (Tex.Crim.App. 1992); Smith v. State, 223 S.W.3d
690, 696-97 (Tex.App.âTexarkana 2007, no pet.). This Court has the authority to modify
an incorrect judgment when it has the information and evidence necessary to do so. See
Tex. R. App. P. 43.2(b); Figueroa v. State, 250 S.W.3d 490, 518 (Tex.App.âAustin 2008,
pet. refâd), cert. denied, 129 S.Ct. 1340, 173 L.Ed.2d 609 (2009). 
Â Â Â Â Â Â Â Â Â Â We therefore reform the trial courtâs judgment to reflect Appellant was convicted by
a jury of evading arrest, a state jail felony, aggravated by a finding that Appellant used and
exhibited a deadly weapon in the commission of the offense, enhanced by a prior felony
conviction. Although we sustain Appellantâs third issue as to modification of the trial courtâs
judgment, we overrule his issue in so far as it asserts that the sentence imposed was
greater than that allowed by law. 

Conclusion
Â 
Â Â Â Â Â Â Â Â Â Â We modify the judgment of the trial court to indicate Appellant was convicted of a
state jail felony, aggravated by the use of a deadly weapon, enhanced by a prior felony
conviction. As modified, the trial courtâs judgment is affirmed. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle 
 Justice 
Â 
Publish.
Â 
Â 
Â 



 for his behavior, including
two student-of-the-month awards, and performed well academically. R.A. also
learned a trade while at TYC and received recognition for completing core
curriculum from the National Center for Construction, Education, and Research
to build cabinets.  R.A. is also
certified to work on auto air conditioners.

Â Â Â Â Â Â Â Â Â Â Â  Carter testified that
after seriously considering the victims and their families, she was comfortable
recommending R.A. for release to parole away from where the victims reside.Â  During cross-examination, she revealed that
she has counseled over one hundred sex offenders and has recommended "very
few" for release.Â  Again during
cross-examination, she testified that R.A. admitted to one incident of abuse
against his victims, yet was found to have engaged in multiple incidents with
each of them.Â  According to Carter, R.A.
abused his male victim because he was young and R.A. believed he would get away
with it.Â  With his female victim, he
acted more on impulse when she visited his home.Â  From the tenor of the questions during
cross-examination, she testified it was possible for R.A. to be a potential
future threat to those who are smaller and weaker than himself.

Â Â Â Â Â Â Â Â Â Â Â  Appellant's mother
testified that she and R.A.'s father own a home in Palestine, Texas, outside
Garza County.Â  However, they do not have
employment waiting for them and her husband has been unable to work since 2008
due to eye problems.Â  He has had five eye
surgeries and she did not know when his treatment would be completed.Â  In response to questions during
cross-examination, she testified that she did not know R.A. was capable of
committing the crimes he did and could not guarantee this would never happen
again while under her supervision.

Â Â Â Â Â Â Â Â Â Â Â  With the aid of an
interpreter, R.A. was admonished about testifying.Â  He admitted the abuse against his two child
victims and apologized to the families.Â 
He also admitted denying his conduct when he was first
institutionalized, then taking responsibility for his action during the course
of his treatment.Â  During
cross-examination, he was asked to describe the acts committed against his
victims, which he did.Â  He believed the
victims would not report him because of their youth.Â  He also admitted threatening the lives of his
male victim and his family.

Â Â Â Â Â Â Â Â Â Â Â  R.A. testified that as
part of his treatment, he was required to keep a notebook in which he wrote
letters to his victims apologizing for his conduct.Â  The letters, however, were only part of the
program and were not intended to be mailed to the victims.Â  He explained that he first denied the
allegations because he was scared after a judge at his first court appearance
told him he could get a life sentence.

Â Â Â Â Â Â Â Â Â Â Â  R.A. hoped to move to
Palestine and work as an auto mechanic and build cabinets.Â  He acknowledged that he would have to register
as a sex offender once his parole was concluded.Â  He explained that his treatment made him
aware that pornography was one of his high risk factors for offending.Â  Several other risk factors included R.A.
being confronted with difficult situations and dealing with others.Â  According to a psychological evaluation
written by Dr. Greg W. Joiner, Ph.D., which was admitted into evidence, other
risk factors included limited sexual contact, limited social network, and
marginal social skills.Â  Dr. Joiner also
listed certain protective factors indicative of not re-offending including
absence of abuse, functional and nurturing family, absence of sexual acting
out, absence of delinquency, absence of substance abuse, and absence of behavioral
problems in an educational setting.Â  Dr.
Joiner concluded, "[o]verall, [R.A.] does not
present as a severe risk for re-offense.Â 
He has some significant protective factors." 

Â Â Â Â Â Â Â Â Â Â Â  Following all the
testimony and brief closing arguments, the trial court expressed certain
concerns.Â  At the time of the hearing,
R.A. was two weeks from his twenty-first birthday and had not yet completed the
minimum three year sentence.Â  While the
trial court commended R.A. on his treatment and progress, it appeared that
R.A.'s testimony was "regurgitation."Â 
The court seriously considered R.A. being amenable to rehabilitation,
but was concerned about Cucolo's testimony and report
that R.A. can conform his behavior within the confines
of a high restriction facility.Â  If
paroled, the court doubted that R.A. would have the intensive supervision he
requires.Â  The court concluded,
"just quite honestly," it "would not feel secure in approving
and ordering a release of [R.A.] when he is several months away from even
serving the minimum period of confinement."Â  The court then ordered that R.A. be
transferred to TDCJ.

Â Â Â Â Â Â Â Â Â Â Â  Notwithstanding the testimony
of Cucolo and Carter that R.A. be released to parole,
the trial court was under no duty to follow their recommendations.Â  J.R.W.,
879 S.W.2d at 256.Â 
After reviewing the entire record and taking into consideration the
factors enumerated in section 54.11(k) of the Family Code, we find there is
some evidence to support the trial court's decision to transfer R.A. to the
Institutional Division of TDCJ. See In re
J.M.O., 980 S.W.2d at 813.Â  Consequently, we find no abuse of discretion
in the trial court's decision.Â  R.A.'s
sole issue is overruled.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, the trial
court's order transferring custody of R.A. to the Institutional Division of the
Texas Department of Criminal Justice for completion of his seventeen year
sentence is affirmed.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Patrick
A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â  Justice

Â 











[1]R.A.
was found to have engaged in five counts of aggravated sexual assault (Tex.
Penal Code Ann. Â§ 22.021) (Vernon Supp. 2010), a first degree felony (Â§
22.021(e)), and two counts of indecency with a child (Tex. Penal Code Ann. Â§ 21,11), a third degree felony (Â§ 21.11(a)(2)(B)).





[2]Tex. Hum. Res. Code Ann. Â§ 61.081(f)(2)
(Vernon Supp. 2010).

Â 





[3]In
2007, the Legislature reduced the age of confinement at TYC from twenty-one
years of age to nineteen.Â  See Act of May 25, 2007, 80th Leg.,
R.S., ch. 263, Â§Â§ 50 and 53, 2007 Tex. Gen. Laws 421,
447, 449.Â  The changes became effective
June 8, 2007.Â  Section 67 of the Act
provides that a child who is adjudicated before the effective date of the Act
is governed by the law in effect when the child was adjudicated and the former
law is continued in effect for that purpose.Â 
See generallyÂ  In re T.G., No. 03-07-00543-CV,
2008 Tex. App. LEXIS 4551, at *18-20 (Tex.App.--Austin June 19, 2008, pet.
denied) (mem. op).

Â 





[4]The State=s brief was due on May 10, 2010.Â  See Tex.
R. App. P. 38.6(b).Â  On October 22, 2010,
citing the failure to receive a copy of Appellant's brief, the State did
address a letter to the Clerk of this CourtÂ 
requesting a thirty day extension in which to file a response.Â  This method of requesting an extension falls
short of the requirements of Rule 38.6(d).Â 
Accordingly, the State's request is denied.Â  While Rule 38.8(b) expressly guides this
Court as to what to do if an appellant fails to file a brief, there is no
corresponding rule to guide us when the State fails to file a brief in response
to an appellant=s brief.Â 
Several intermediate appellate courts, including this Court, have held
that whenever the State fails to file a brief, an appellate court should
conduct an independent analysis of the merits of the appellant=s claim of error, limited to the arguments raised at
trial by the State, to determine if there was error.Â  See Siverand v.
State, 89 S.W.3d 216, 220 (Tex.App.BCorpus Christi 2002, no pet.); Haley
v. State, No. 13-02-0033-CR, 2006 Tex.App. LEXIS 391 (Tex.App.BCorpus Christi Nov. 22, 2006, pet. ref=d) (not designated for publication); Mosley v.
State, Nos. 07-02-0178-CR, 07-02-0179-CR, 2003 Tex.App. LEXIS 6899 (Tex.App.BAmarillo Aug. 12, 2003, pet. ref=d) (not designated for publication).Â  Cf. In re Bowman, No.
03-07-0418-CR, 2007 Tex.App. LEXIS 9500 (Tex.App.BAustin Dec. 5, 2007, no pet.) (not designated for
publication); Burns v. Rochon, 190
S.W.3d 263 (Tex.App.BHouston [1st Dist.] 2006, no
pet.).Â  





[5]Both
victims' mothers and R.A.'s mother testified with the aid of an interpreter.Â