

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00341-CR

KAREN CHANG                                                        APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

In two issues, Appellant Karen Chang challenges the legal and factual sufficiency of the evidence to support her conviction for prohibited discharge

---

[1]*See* Tex. R. App. P. 47.4.

(MS4).[2]  We will affirm.

## II. Factual and Procedural Background

On April 16, 2008, Vicki Stokes, a senior environmental specialist with the City of Fort Worth, and Casey Nettles, an environmental specialist with the City of Fort Worth, responded to a citizen's complaint that grease was flowing along the curb line in front of his house.  Stokes and Nettles ended up in the parking lot behind the Wan Fu restaurant, where they observed (1) several open-top, five-gallon buckets containing grease trap waste; (2) a small amount of absorbent material that had been laid on the ground around the buckets and around a manhole for a grease trap[3] (the manhole cover had been removed); (3) several unopened bags of absorbent material; (4) grease trap waste that had tracked on the ground from the grease trap onto the street's curb line; and (5) two wooden barricades apparently intended to divert traffic away from the grease trap waste in the parking lot.  According to Stokes, the grease trap waste had traveled a

---

[2]The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.  All other cases to the contrary, including *Clewis*, are overruled."  *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010).  Therefore, we will apply the same standard of review to both of Chang's sufficiency complaints.

[3]Stokes described the grease trap as a "giant underground tank."

distance of between a tenth and a quarter of a mile from the grease trap and entered into a gutter.

Chang arrived and said that she was the owner of the restaurant and that its grease trap had overflowed the previous day, April 15, 2008.  She had instructed her employees to scoop up grease from the overflowing trap and to put it into the buckets, and she had also purchased and had her employees lay out absorbent material to soak up grease trap waste.  Rescue Rooter assessed the grease trap's condition on April 15, 2008, but did not repair the problem—a clogged pipe—until the following day.  Chang knew that the pipe was backed up and had not been repaired and that grease trap waste was leaking to the curb line, but she continued to operate the restaurant between 8:00 p.m. and 10:00 p.m.  The restaurant sent water down the drain and cleaned its cooking vats.  Rescue Rooter told Stokes that the clogged line belonged to the Wan Fu restaurant.  Stokes issued a citation to Chang for "discharge of non-stormwater (grease trap waste) to the City's storm drain system."

Chang waived her right to a jury trial, pleaded not guilty, and proceeded to a bench trial in the municipal court.  The trial court found Chang guilty and ordered her to pay a fine and court costs in the amount of $1,564.  Chang appealed to the county criminal court, which affirmed the trial court's judgment. *See* Tex. Gov't Code Ann. § 30.00014(a) (Vernon Supp. 2010).  Chang appeals. *See id.* § 30.00027(a) (Vernon 2004).

## III. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing

4

the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

## IV. EVIDENTIARY SUFFICIENCY

Section 12.5-302 of Fort Worth's municipal code of ordinances, titled "Discharge to MS4 prohibited," states that "[a] person commits an offense if the person introduces or causes to be introduced into the MS4 any discharge that is not composed entirely of stormwater." Fort Worth, Tex., Code of Ordinances ch. 12.5, art. III, div. 1, § 12.5-302 (2010). "Municipal Separate Storm Sewer System (MS4)" means "the system of conveyances (including . . . municipal streets, . . . curbs, [and] gutters, . . . ) owned and operated by the city and designed or used for collecting or conveying stormwater, and which is not used for collecting or conveying sewage." *Id.* § 12.5-300. Therefore, for purposes of section 12.5-302, the curb line is included within the meaning of MS4.

The complaint alleged that Chang "[d]id then and there unlawfully, knowingly discharge or introduce into the Lake Worth watershed, a pollutant/polluted water, contrary to city ordinances." Chang challenges the sufficiency of the evidence to show that she knowingly discharged grease trap waste into the MS4.

5

The penal code delineates three "conduct elements" that may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances of the conduct. *See* Tex. Penal Code Ann. § 6.03(b) (Vernon 2003); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A result oriented offense, such as homicide, criminalizes unspecified conduct based upon the result of the action. *McQueen*, 781 S.W.2d at 603; *Tovar v. State*, 949 S.W.2d 370, 372 (Tex. App.—San Antonio 1997), *aff'd*, 978 S.W.2d 584 (Tex. Crim. App. 1998). When a specific act is criminalized because of its very nature, such as gambling, a culpable mental state applies to committing the act itself and, therefore, the offense is nature oriented. *Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App.—San Antonio 1996, no writ). Section 12.5-302 criminalizes the act of discharging or introducing into the MS4 any discharge that is not composed entirely of stormwater. Accordingly, the offense described in section 12.5-302 is a "nature of the conduct" offense. *See, e.g., Slott v. State*, 148 S.W.3d 624, 632 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (reasoning that storage or disposal of waste is a "nature of conduct" offense); *L.B. Foster Co. v. State*, 106 S.W.3d 194, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (reasoning that illegal disposal of used oil was a "nature of conduct" and "circumstances of conduct" offense because person must act knowingly with respect to both the nature of his conduct—the disposal—and the circumstances of his conduct—that used oil was disposed of).

Penal code section 6.03(b) provides that "[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. § 6.03(b). "Knowingly" means that the defendant knows factually what he is doing. *Slott*, 148 S.W.3d at 632–33.

Stokes testified that she visited the Wan Fu restaurant approximately five months before the April 2008 incident because grease trap waste had overflowed from the grease trap and traveled down the street and into a storm drain. She recounted that it looked like the restaurant had tried to wash the grease trap waste away by using water but that it ultimately "create[d] more of a mess." Another city employee, Inspector Ramirez, explained to Chang that, in the event there was another grease trap overflow, she should use absorbent material to prevent the grease trap waste from running off of the property. Stokes said that city employees stressed to Chang the importance of ensuring that grease trap waste did not reach the curb line.[4]

When Stokes arrived at the Wan Fu restaurant on April 16, 2008, she observed multiple five-gallon buckets full of grease trap waste, a small amount of absorbent on the ground around the grease trap's manhole, and several unopened bags of absorbent material. Stokes testified that an insufficient amount of absorbent material was used to prevent the grease trap waste, which

---

[4]Stokes did not issue Chang a citation for this incident.

had run a "significant distance down to residential streets," from contacting the curb line.

Chang testified that she knew the grease trap overflowed on April 15, 2008, and that she had asked her employees to scoop up waste and to put it into buckets. She knew that Rescue Rooter had not repaired the clogged line on April 15, 2008, but she continued operating the restaurant between 8:00 p.m. and 10:00 p.m. Chang testified that she put down some absorbent material but that it did not keep the grease trap waste from contacting the curb. Chang acknowledged that "probably a little bit" of grease trap waste had contacted the curb.

The evidence thus demonstrates (1) that Chang knew that grease trap waste overflowing from the grease trap could contact the curb line; (2) that Chang knew that using sufficient amounts of absorbent material would prevent overflowing grease trap waste from contacting the curb line; (3) that Chang knew that the grease trap had overflowed due to a clogged pipe on April 15, 2008; (4) that Chang instructed her employees to scoop up grease trap waste and to put it into buckets instead of setting out a sufficient amount of absorbent material to absorb the grease trap waste and to halt the flow of the waste onto the curb line; and (5) that Chang continued to operate the restaurant—sending water down the drain and cleaning vats—knowing that the clogged pipe had not been repaired and that grease trap waste had leaked to the curb line. Accordingly, viewing all of the evidence in the light most favorable to the prosecution, we hold

8

that the trial court could have found beyond a reasonable doubt that Chang knowingly discharged or introduced grease trap waste into the Lake Worth watershed, contrary to city ordinances. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The evidence is sufficient to support Chang's conviction under section 12.5-302. Accordingly, we overrule Chang's two issues.

## V. CONCLUSION

Having overruled Chang's two issues, we affirm the county criminal court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 17, 2011